999 A.2d 1151 (2010)
414 N.J. Super. 563
CBS OUTDOOR, INC., Plaintiff-Respondent,
v.
BOROUGH OF LEBANON PLANNING BOARD/BOARD OF ADJUSTMENT, Defendant-Appellant.
No. A-3479-08T2
Superior Court of New Jersey, Appellate Division.
Telephonically Argued June 15, 2010.
Decided July 22, 2010.
*1153 Jonathan E. Drill, Cedar Grove, argued the cause for appellant (Stickel, Koenig & Sullivan, attorneys; Mr. Drill, on the brief).
Louis L. D'Arminio, Woodcliff Lake, argued the cause for respondent (Price, Meese, Shulman & D'Arminio, P.C., attorneys; Mr. D'Arminio and Kathryn J. Razin, on the brief).
Before Judges STERN, SABATINO, and J.N. HARRIS.
The opinion of the court was delivered by
JONATHAN N. HARRIS, J.S.C. (temporarily assigned).
This is a billboard case. It involves an appeal from a final judgment in an action in lieu of prerogative writs that reversed defendant's denial of conditional use variances for the construction of that billboard. It implicates three difficult, intertwined questions of land use law: (1) what are the standards for a conditional use variance when linked with final site plan approval; (2) what is the effect of a municipality's lengthy failure to file a development regulationhere, a zoning ordinance amendmentwith a county planning board pursuant to N.J.S.A. 40:55D-16; and (3) does the time of decision rule apply where a municipality adopts a later ordinance attempting to repeal the unfiled development regulation. After a careful review of the entire record before us, we *1154 affirm in part; reverse in part; and provisionally remand the matter to the local land use agency for further appropriate proceedings.

I.
On November 16, 2006, plaintiff CBS Outdoor, Inc. (CBS) submitted an initial development application for an outdoor, off-premises advertising signa billboardto defendant Borough of Lebanon Planning Board/Board of Adjustment (the Board).[1] Variances were sought pursuant to N.J.S.A. 40:55D-70(c) and (d), together with final site plan approval. The proposed billboard was to be located within Lebanon's Commercial Research Office Manufacturing/200,000 Zone (COMM-ROM/200,000) on a parcel of land along the south side (easterly direction of travel) of Interstate Route 78. Months before the development application was filed with the Board, plaintiff had obtained the requisite conditional permit for the proposed billboard from the New Jersey Department of Transportation. See N.J.A.C. 16:41C-1.1 to -10.4.
The site of the projected billboard was already being used for a commercial use, an independently-owned self-storage facility and office.[2] CBS proposed to lease a vacant portion of the property closest to the highway and thereupon erect a billboard consisting of a columnar support structure to hold two sign faces aloft fifty-five feet, with each sign's perimeter dimensions planned for fourteen feet in height and forty-eight feet long. According to the final sign lighting detail plan submitted by CBS, each of the two billboard signs would each be illuminated by five 400-watt lamps mounted at the bottom, facing upwards, located three feet below the face of the sign and six feet away from it.
At the time of CBS's first filing with the Board, the application sought two (d)-series variances pursuant to the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -163: a (d)(1) use variance pursuant to N.J.S.A. 40:55D-70(d)(1), and a (d)(6) height variance pursuant to N.J.S.A. 40:55D-70(d)(6). These (d)-series variances were required because at the time of the initial application, the Lebanon Borough Land Use Ordinances (1983, Revised 2004), specifically § 7.04, prohibited billboards in the pertinent zoning district.
In April 2007, five months after the development application was filed, but prior to the commencement of public hearings before the Board, the Borough of Lebanon adopted Ordinance No. 2007-04. This amendment to Lebanon's zoning regulations permitted the establishment and operation of billboards as a conditional use in two of the municipality's zoning districts, including the COMM-ROM/200,000 district where the billboard at issue would be located. The parties would only discover some time laterindeed, more than two years laterthat Ordinance No. 2007-04 had never been filed with the Hunterdon County Planning Board in accordance with N.J.S.A. 40:55D-16.
When CBS learned of the municipality's adoption of Ordinance No. 2007-04, CBS amended its pending development application, to now seek only conditional use variances pursuant to N.J.S.A. 40:55D-70(d)(3), along with site plan approval. The amended development application sought variance relief from the following specific setback discordances:

*1155
--------------------------------------------------------------------
 Regulation Required Proposed
--------------------------------------------------------------------
§ 7.08(2)(a)(1)(c): Minimum setback of post/face 55 feet 12 feet
of billboard set back from all property lines at
least the same distance as the height of the
structure.
--------------------------------------------------------------------
§ 7.08(2)(a)(2)(e): Minimum setback from all 50 feet 4 feet
points of the billboard sign face from any
structure.
--------------------------------------------------------------------

Of relevance to this appeal, CBS did not seek conditional use variances from the following lighting standards and specifications in Ordinance No. 2007-04, arguably because the applicant believed that the development application satisfied each:

----------------------------------------------------------------------------
 Regulation Required
----------------------------------------------------------------------------
§ 7.08(2)(a)(4)(e): Illumination shall be restricted to sign face
Illumination of sign face. only. Visors or other control devices shall be
 used to eliminate sky glare, light trespass or
 spillover light.
----------------------------------------------------------------------------
§ 7.08(2)(a)(4)(h): Shields, visors, or other devices shall prevent
Lighting of the billboard. glare and spillover of light beyond the property
 lines and prevent disturbance of the viewing
 resolution of a night sky, sky glare or
 glow.
----------------------------------------------------------------------------

The matter was heard before the Board on May 9, July 11, and September 17, 2007. During the course of these hearings, the Board was presented with testimony of three witnesses by CBS: Christopher Wiss, a corporate representative of CBS who spoke about the background of the development application; Henry Banker, a tree expert who discussed the impact the billboard would have on nearby trees, and opined about what vegetation would have to be cut down and eliminated in order to build the billboard; and Alex Zepponi, a professional engineer and planner who explained the construction details and planning issues involved in the development of the billboard. Indeed, Zepponi was heavily questioned about planning issues, particularly lighting concerns, and CBS's compliance with the balance of Ordinance No. 2007-04's conditional requirements. He was also asked to consider and explain the need and justification for the requested conditional use variances.
It was not until the third and final hearing on September 17, 2007, that Zepponi submitted a revised site plan drawing that was intended to specifically address the serious lighting queries raised by the Board, particularly those regarding the lighting spillover stemming from the placement of lighting fixtures at the base of the billboard.[3] Zepponi's testimony confirmed what the illumination chart had plainly disclosed: (1) there was light spillover within six feet of the top of the billboard of between twelve and twenty-three foot-candles; (2) "[i]f you go to the left and right *1156 of the [bill]board six feet you're down in the area [of] seventeen foot[-]candle[s] to the right and approximately [nine], [ten] foot[-]candle[s] to the left;" and (3) "at the bottom of the [bill]board essentially within two feet you're at zero. There are a couple [of] points 0.1 foot[-]candles within two feet of the bottom of the [bill]board."[4] The revised site plan drawing did not explicitly show shielding, visors, or baffles along the top or sides of the billboard faces to constrain the light to the billboard faces alone, despite the specific requirement for such in the ordinance.
Because the revised site plan drawing with the specific illumination data had only been first presented to the Board at the September 17, 2007 hearing, the Board's engineer, in advising the Board, indicated that "[i]t's a little hard for me to give you any feedback on those lighting numbers not having seen it subsequent. My gut is [twenty-three] foot[-]candle[s] [six] feet off the sign is pretty high." Zepponi responded to the comment by conceding that "halo" might occur if there were "some particulates in the area which you're going to get from any light source." However, Zepponi contended, "this is the latest, best designed light fixture that's currently commonly available." Instead of offering to provide tangible evidence of how CBS intended to comply with all of the ordinance's lighting conditions and satisfy all of the Board's illumination concerns prior to the Board's vote on the development application, Zepponi casually indicated that the billboard's lighting fixtures could be fitted with shields to prevent light spillover. The Board's engineer, however, suggested that the Board needed to see specific details about such a refinement prior to its vote, in order to determine if all of the required standards and specifications of the ordinance were satisfied. CBS instead suggested that the Board grant "preliminary approval now and we can come back with some additional design, whatever the Board would want us to do." Tellingly, CBS's attorney stated the following in his final summation to the Board, just prior to the vote on the development application:
But, you know, signs are designed to be seen and it's nearly impossible to keep [illumination] exactly on the four corners [of] the sign. So there would be some minor spillage. Where is some minor spillage down below. We can restrict signage by putting baffling [,] as Mr. Zepponi said [,] on the sign.
At the conclusion of the final hearing, the Board voted to deny plaintiff's application for conditional use variances, limiting its motion to the two applied-for setback deviations because CBS had never sought conditional use variances from the lighting requirements of §§ 7.08(2)(a)(4)(e) and (h) of Ordinance No. 2007-04. The Board's determination was memorialized in a written resolution adopted on January 10, 2008, in which the Board explained that CBS was unable to fulfill the lighting requirements of §§ 7.08(2)(a)(4)(e) and (h) "because of the significant amount of light spillover along the edges of the sign face." These failures, along with several other Board-identified deficiencies and unanswered questions, impelled the Board to conclude that not only were additional conditional use variances required, but *1157 that CBS had failed to satisfy the requisite positive and negative criteria of N.J.S.A. 40:55D-70(d).
In the resolution, when the Board analyzed CBS's conditional use variance relating to the fifty-five foot setback requirement of § 7.08(2)(a)(1)(c), it stated:
The applicant did not list any positive benefits provided by this large deviation from the ordinance standard. The applicant did not do any type of balancing tests to measure the positive effects of granting such a variance against any negative impacts. As a result, the applicant failed to satisfy the negative criteria for the variances in question.
In similar fashion, when the resolution addressed the similar fifty foot setback requirement of § 7.08(2)(a)(2)(e), the resolution stated:
Once again, the applicant did not perform any balancing test to provide a basis for a determination that the positive benefits of granting this variance outweigh the negative impacts of granting the relief.
The Board further commented upon CBS's general failure "to provide a detailed plan to demonstrate how such negative aspects of the development may be mitigated." Those negative aspectsspecifically identified in the resolutionwere a diminution in aesthetic desirability; an increase in noise; and a negative impact upon storm water management related to the "significant cutting of existing vegetation along the frontage of Route 78" compounded by "significant tree trimming and/or tree removal to the west of the billboard location."
Lastly, the resolution commented upon two bulk variances that CBS never sought as part of its development application, but that the Board now deemed necessary: (1) a fifty foot front yard setback violation and (2) an increase in impervious coverage. Because the Board denied the conditional use variances, it did not dwell long on these dimensional variances, using them only to conclude:
The applicant has chosen to site its proposed tower on a heavily developed site and to sandwich the tower between the existing building and the property line. The property already has extensive development. The fact that two bulk variances are required in order to shoehorn in an additional structure indicates that the applicant is seeking more development than the site can properly handle.
On March 27, 2008, CBS filed a complaint in lieu of prerogative writs in the Law Division, claiming that (1) the Board did not have reasonable support to deny its application; (2) the Board's action was arbitrary, capricious, and unreasonable and should therefore be reversed; and (3) relief from the conditional use requirements was warranted, as the Board's resolution was unsupported in its failure to find that the required negative criteria were present. CBS's pleading did not address those issues connected with the non-filing of Ordinance No. 2007-04 because it still was unaware of the municipality's faux pas. So too was the Board oblivious to the omission, as its answer did not contend that a (d)(1) variance was required due to the alleged ineffectiveness of the unfiled ordinance.
After meticulously reviewing both the agency's proceedings and the evidence presented for the Board's consideration, the Law Division judgein an oral decisionreversed and remanded the matter to the Board for its further review of the site plan aspects of the development application. The trial court agreed with CBS's arguments regarding the Board's improper denial of the conditional use variances. When it came to the critical illumination issues, the court found the following:

*1158 With respect to the lighting the testimony is that the [B]oard was presented [with] evidence that the applicant could comply with the lighting requirements. Thatthe response from the borough engineer was, well it seems like a lot of light to me, and I'm not sure. Nonetheless, the testimony was, as opposed to speculation that I'm not sure, there could be a lot of light, that we can comply with this, either now or through a site plan approval, and we will show and if you look at the ordinance in that regard, even though some of the language is for, I guess it's [e] and [h], they do talk about specific mechanisms, shielding visors or other, to prevent disturbance, to eliminate glare, light trespass, spillover light.
* * *
But they did indicate that they were willing to abide by [e] and [h] through the use of visors and other mechanisms, and that seemed to me to conclude the matter, because I never heard from the engineer that it's impossible, you can't do it. that seems to me to be a matter of site plan detail, not a matter of a variance. There was a commitment to use the mechanisms, do additional items, like turning off the lights to accommodate the observatory. So, I think the applicant has sufficiently proved its case.
As we understand it, the trial judge determined that the Board's attempted reliance upon increased noise and diminished aesthetics in denying the application was trumped by the overriding policy judgments of Lebanon's governing body when it first adopted the amendatory ordinance in 2007, allowing billboards as a conditional use. The Law Division essentially concluded that the Board had not followed the law respecting the proper method of analyzing applications for conditional use variances and found that CBS had adequately demonstrated its entitlement to a grant of all necessary variances. The matter was then remanded to the Board for its consideration of lighting in the context of site plan review, together with "all the [other] standard site plan issues." On March 20, 2009, the Board filed its appeal with this court.
While this appeal was pending, the municipality had a change of heart regarding the construction of new billboards. On May 20, 2009, the governing body adopted Ordinance No. 2009-03, which impliedly revoked Ordinance No. 2007-04 and expressly repealed "Current Article 7 of the Borough of Lebanon's Land Use Ordinances, relating to Signs," resulting in "prohibiting within the Borough" of all billboards. Several days later, the Borough Clerk mailed a copy of Ordinance No. 2009-03 to the Hunterdon County Planning Board in accordance with N.J.S.A. 40:55D-16; unlike its predecessor, this ordinance was properly and promptly filed the next day. Additionally, notice of the passage of the 2009 ordinance was published in the Hunterdon County Democrat newspaper pursuant to N.J.S.A. 40:49-2(d).
As noted, Ordinance No. 2009-03 specifically prohibited the erection of billboards in all of Lebanon's zoning districts. This had the effect of requiring such applicants to apply for the more exacting (d)(1) use variance, as opposed to the formerly available and less stringent (d)(3) conditional use variance pursuant to Ordinance No. 2007-04.
On June 29, 2009, defendant filed its initial brief with this court, but it was not until eleven days later that Lebanon's Borough Clerk discovered that Ordinance No. 2007-04 had never been filed with the Hunterdon County Planning Board pursuant to N.J.S.A. 40:55D-16. After learning of this failure to file, defendant filed a motion with this court to vacate the Law *1159 Division's judgment on July 23, 2009, arguing that it was void because Ordinance No. 2007-04 never enjoyed efficacy during the pendency of CBS's development application, and a (d)(1) variance was therefore required pursuant to the then-revived and applicable 1983 version of Lebanon's land use regulations. We denied that motion, instead electing to remand the evolving and on-going dispute to the trial court to address the impact on its judgment of (1) the failure of the Borough to file Ordinance No. 2007-04 and (2) the subsequent adoption and filing of Ordinance No. 2009-03.
On January 28, 2010, after the remand hearing concluded, the trial court in a written decision determined that, although Ordinance No. 2007-04 was never properly filed, it should be deemed effective for the purposes of the instant development application and subsequent litigation, "relating back to the institution of the hearings before the Board." Additionally, the court concluded that the Board determination and subsequent trial were not affected by the passage of Ordinance No. 2009-03's blanket prohibition of billboard use in the Borough.
Thereafter, the parties filed supplemental briefs and appendices after remand respectively, urging this court to either (1) vacate the original Law Division judgment because Ordinance No. 2007-04 was never filed, and asserting the applicability of the time of decision rule or (2) affirm the conclusions of the trial judge on remand.

II.

A.
The first and most fundamental dispute that must be resolved in this appeal is whether the Board's denial of the request for conditional use variances was appropriate. If the Board acted properly regarding those setback-implicated conditional use variances, then CBS's billboard application must fail in its entirety. On the other hand, if the Board was capricious in its refusal to grant the two conditional use variances, then a remand to the Board for its consideration of lighting issues and the proffered site plan could be sustained, subject to the impact and effect, if any, of (1) the failure to file Ordinance No. 2007-04 with the Hunterdon County Planning Board and (2) the impact of Ordinance No. 2009-03 under the time of decision rule.[5]
We start with the time-tested mantra, "[a] local zoning determination will be set aside only when it is arbitrary, capricious or unreasonable." Kramer v. Bd. of Adjustment, Sea Girt, 45 N.J. 268, 296, 212 A.2d 153 (1965). Even were we to harbor reservations as to the good judgment of a local land use agency's decision, "there can be no judicial declaration of invalidity in the absence of clear abuse of discretion by the public agencies involved." Id. at 296-97, 212 A.2d 153 (citing Ward v. Scott, 16 N.J. 16, 23, 105 A.2d 851 (1954)). We apply this same standard when reviewing a trial court's decision on an appeal from a decision of a board of adjustment. D. Lobi Enters. v. Planning/Zoning Bd. of Borough of Sea Bright, 408 N.J.Super. *1160 345, 360, 974 A.2d 1134 (App.Div.2009); N.Y. SMSA, L.P. v. Bd. of Adjustment of Twp. of Weehawken, 370 N.J.Super. 319, 331, 851 A.2d 110 (App.Div.2004).
In this context, the spirit of our current endeavor acknowledges the fact "that local citizens familiar with a community's characteristics and interests are best equipped to assess the merits of variance applications." Med. Ctr. at Princeton v. Twp. of Princeton Zoning Bd., 343 N.J.Super. 177, 198, 778 A.2d 482 (App. Div.2001). A reviewing court's analysis must focus on the validity of the Board's action; it is not within this court's mandate to substitute our judgment for the proper exercise of the Board's discretion. Fallone Prop. L.L.C. v. Bethlehem Twp. Plan. Bd., 369 N.J.Super. 552, 561, 849 A.2d 1117 (App.Div.2004). Although the scope of review of a local governmental agency decision is circumscribed, it is "`not simply a pro forma exercise in which [the court] rubber stamp[s] findings that are not reasonably supported by the evidence.'" In re Taylor, 158 N.J. 644, 657, 731 A.2d 35 (1999) (quoting Chou v. Rutgers, State Univ., 283 N.J.Super. 524, 539, 662 A.2d 986 (App.Div.1995), certif. denied, 145 N.J. 374, 678 A.2d 714 (1996)). The court's authority and duty is to review the record before the Board in order to determine whether the Board's decision was adequately supported by the evidence. Lang v. Zoning Bd. of Adjustment of N. Caldwell, 160 N.J. 41, 58, 733 A.2d 464 (1999). See also Burbridge v. Mine Hill Twp., 117 N.J. 376, 385, 568 A.2d 527 (1990) (stating that there must be "adequate evidence" in the record supporting the board's determination); Pullen v. S. Plainfield Planning Board, 291 N.J.Super. 303, 312, 677 A.2d 278 (Law Div.1995) aff'd, 291 N.J.Super. 1, 676 A.2d 1095 (App.Div.1996) (holding that there must be "substantial evidence" of both the positive and negative criteria before the board).
Simply stated, a reviewing court must determine whether the Board followed statutory guidelines and properly exercised its discretion. Med. Ctr. at Princeton v. Twp. of Princeton Zoning Bd., supra, 343 N.J.Super. at 199, 778 A.2d 482. Lastly, the deference accorded to a board's denial of a variance is greater than that given to its decision to grant a variance. Ibid; Saddle Brook Realty, L.L.C. v. Twp. of Saddle Brook Zoning Bd. of Adjustment, 388 N.J.Super. 67, 76, 906 A.2d 454 (App.Div.2006); Northeast Towers, Inc. v. Zoning Bd. of Adjustment, Borough of West Paterson, 327 N.J.Super. 476, 494, 744 A.2d 190 (App.Div.2000); Funeral Home Mgmt., Inc. v. Basralian, 319 N.J.Super. 200, 208, 725 A.2d 64 (App. Div.1999). Thus, a party seeking to overturn the denial of a variance, such as CBS, must prove that the evidence before the local board was "overwhelmingly in favor of the applicant." Scully-Bozarth Post 1817 of the VFW v. Planning Bd., 362 N.J.Super. 296, 314-315, 827 A.2d 1129 (quoting Med. Realty v. Bd. of Adjustment, City of Summit, 228 N.J.Super. 226, 233, 549 A.2d 469, (App.Div.1988)), certif. denied, 178 N.J. 34, 834 A.2d 407 (2003).
N.J.S.A. 40:55D-3 defines a conditional use as:
a use permitted in a particular zoning district only upon a showing that such use in a specified location will comply with the conditions and standards for the location or operation of such use as contained in the zoning ordinance, and upon the issuance of an authorization therefore by the planning board.
Consequently, although a conditional use may be appropriate in certain areas of a zoning district, it is not necessarily appropriate everywhere within the zoning district. "It is for this reason that a municipality is permitted to delegate discretion to its planning board to consider the suitability *1161 of a proposed conditional use for a particular site." Cardinal Props. v. Westwood, 227 N.J.Super. 284, 287, 547 A.2d 316 (App.Div.), certif. denied, 111 N.J. 631, 546 A.2d 545 (1988).
If, however, the proposed conditional use does not meet all of the conditions for the use, an applicant must apply to the board of adjustment for a conditional use variance pursuant to the standards articulated in N.J.S.A. 40:55D-70(d)(3). Coventry Square, Inc. v. Westwood Zoning Bd. of Adjustment, 138 N.J. 285, 296, 650 A.2d 340 (1994). "A variance for a deviation from a condition allows the applicant to engage in a conditional use despite the applicant's failure to meet one or more of the conditions: It is not the use but the non-compliance with the conditions that violates the ordinance." Id. at 287, 650 A.2d 340.
In Coventry Square, the Supreme Court explained the burden of proof that applicants must satisfy in order to be granted a conditional-use variance. In contrast to a (d)(1) use variance to allow a use in a zoning district where such use is prohibited, the proofs required for a (d)(3) conditional use variance are notably less stringent. Id. at 287, 650 A.2d 340. This is because the use itself is not prohibited but rather the deviation is only as to one or more standards or specifications imposed upon such use. Thus, the Court concluded:
We hold that the proof of special reasons that must be adduced by an applicant for a "d" variance from one or more conditions imposed by ordinance in respect of a conditional use shall be proof sufficient to satisfy the board of adjustment that the site proposed for the conditional use, in the context of the applicant's proposed site plan, continues to be an appropriate site for the conditional use notwithstanding the deviations from one or more conditions imposed by the ordinance. That standard of proof will focus both the applicant's and the board's attention on the specific deviation from conditions imposed by the ordinance, and will permit the board to find special reasons to support the variance only if it is persuaded that the noncompliance with conditions does not affect the suitability of the site for the conditional use. Thus, a conditional use variance applicant must show that the site will accommodate the problems associated with the use even though the proposal does not comply with the conditions the ordinance established to address those problems.
[Id. at 298-99, 650 A.2d 340 (emphasis added).]
As for the negative criteria, the Court concluded:

The board of adjustment must evaluate the impact of the proposed [conditional] use variance upon the adjacent properties and determine whether or not it will cause such damage to the character of the neighborhood as to constitute "substantial detriment to the public good."... In respect of the second prong, that the variance will not "substantially impair the intent and purpose of the zone plan and zoning ordinance," N.J.S.A. 40:55D-70(d), the board of adjustment must be satisfied that the grant of the conditional-use variance for the specific project at the designated site is reconcilable with the municipality's legislative determination that the condition should be imposed on all conditional uses in that zoning district.
[Id. at 299, 650 A.2d 340 (internal citations omitted) (emphasis added).]
Because the memorializing resolution of the Board is the wellhead for the judiciary's consideration of the validity of municipal action, Scully-Bozarth Post 1817 of the VFW v. Planning Bd., supra, 362 *1162 N.J.Super. at 313-14, 827 A.2d 1129 ("[t]he resolution must rise or fall on its merits"), we begin our review there. The Supreme Court has noted that "the key to sound municipal decision-making is a clear statement of reasons for the grant or denial of a variance." Kaufmann v. Planning Bd. for Twp. of Warren, 110 N.J. 551, 566, 542 A.2d 457 (1988). "Local boards and their counsel should take pains to memorialize their decisions in resolutions that explain fully the basis on which the Board had acted, with ample reference to the record and the pertinent statutory standards." Commercial Realty & Res. Corp. v. First Atl. Props. Co., 122 N.J. 546, 566-67, 585 A.2d 928 (1991) (internal citation omitted). "[A] mere recital of testimony or conclusory statements couched in statutory language" is insufficient. N.Y. SMSA, L.P. v. Bd. of Adj. of Twp. of Weehawken, supra, 370 N.J.Super. at 332-33, 851 A.2d 110 (internal citations omitted).
In this case, the Board's resolution provides a lengthy summary of the proceedings that unfolded during the presentation of CBS's development application and recites the Board's reaction to the testimony and evidence. However, it is apparent to us that the Board did not deploy the Coventry Square paradigm when it considered the two setback conditional use variances. The resolution failed to focus upon the "specific deviation[s]" from the conditional use standards and whether those deviations affected the suitability of the site for the proposed use. See Coventry Square, supra, 138 N.J. at 298, 650 A.2d 340. Additionally, the Board did not thoroughly analyze the impact of the use on adjacent properties and determine whether such use specifically constituted a substantial detriment to the public good. Id. at 299, 650 A.2d 340. Instead, as its resolution stated, the Board relied upon an ad hoc methodology that would have required the applicant to conduct a "balancing test ... to determine if the positive results of granting the variance would outweigh the negative aspects."
On the other hand, the signal concern of the Boardbut unfortunately not stressed during the course of its proceedingsturned out to be the fact that CBS had presented an incomplete picture of the illumination issues and an inadequate response to those problems.[6] This failure to fully address all lighting issues was intensified by the Board's correct insistence that unless a variance was requested, conditional uses must satisfy all of the ordinance's standards and specifications relating to the conditional use, even if those requirements are numerous.
Notwithstanding our substantial alignment with the conclusions of the trial judge, we cannot agree with his minimization of lighting issues and relegation of those problems to site plan review, finding that eventually "the applicant could comply with the lighting requirements." Even if that were an accurate observation, because those conditions relating to illumination were integral to the conditional use, they could simply not be deferred to site plan review. A promise from an applicant about its future potential compliance with a conditional use standard or specification is not permitted under either the MLUL or the Coventry Square framework.
We note that CBS did not seek bifurcation of its application into separate applications for the conditional use variances and subsequent site plan approval pursuant to N.J.S.A. 40:55D-76(b). Thus, in one integrated proceeding, CBS was required to demonstrate complete fidelity to the zoning *1163 regulations as well as thorough compliance with the Borough's site plan review requirements, or seek variances or exceptions therefrom. See N.J.S.A. 40:55D-51, -70(c), -70(d). Its suggestion to the Board to conditionally grant preliminary site plan approval, allow the billboard to be built, and then allow CBS to tweak the lighting as needed, is wholly inconsistent with both the duty to meet all of the standards and specifications of a conditional use and to demonstrate full compliance with local site plan requirements. Deferral of full compliance for even a six-month period was not something that the Board was required to countenance.
On this issue we conclude that the trial judge did not provide sufficient deference to the Board's finding that light spillover was a justifiable concern and that the applicant's illumination compliance was imperfect. We understand the Board's argument that CBS was on notice of the Board's significant interest in the lighting issues and should have requested a continuance to more fully demonstrate the tangible means by which it would comply with the lighting standards of §§ 7.08(2)(a)(4)(e) and (h). On balance, however, if the Board was so unconvinced about CBS's ability to meet those standards, it should have treated any deviations from the ordinance's zero tolerance[7] for light spillover as implied requests for additional conditional use variances, and then analyzed them under Coventry Square's standards. Although a remand to the Board is required so that it may follow Coventry Square regarding the setback conditional use variances, it is also necessary that the illumination issues be reviewed by the Board through that same lens. It was not appropriate to remand the matter for treatment of the lighting issues as mere site plan concerns. Rather, the Law Division should have reversed and remanded the application for reconsideration of whether CBS had satisfied all respects of Coventry Square, including the illumination issues. To that end, and subject to the balance of our determinations in this opinion, we provisionally remand the entire development application (including the site plan review component) to the Board, where CBS may supplement the record on all issues[8] and either (1) attempt to demonstrate complete compliance with §§ 7.08(2)(a)(4)(e) and (h) or (2) argue that it is entitled to additional conditional use variances therefor, pursuant to N.J.S.A. 40:55D-70(d)(3). The Board shall be obliged to analyze the entire development application anew, and make specific findings and conclusions for each variance in light of what we have said, and as commanded by Coventry Square.

B.
Having concluded that there were substantial grounds for the Law Division's sympathetic treatment of the application and a basis for our provisional remand, we must address the incongruity between such a mandate and the two post-trial circumstances that now arguably deprive *1164 the Board of the authority to consider CBS's development application at all. The first dilemma is the non-filing of Ordinance No. 2007-04, which raises the question of whether it ever became effective; the second situation is the adoption of Ordinance No. 2009-03, specifically in the context of this litigation, which arguably triggers an analysis of the time of decision rule. Logically, we start with the effect of the non-filing of Ordinance No. 2007-04.
The failure to file Ordinance No. 2007-04a development regulation adopted pursuant to the MLULis relevant to this case because of N.J.S.A. 40:55D-16, which provides in relevant part:
Development regulations, except for the official map, shall not take effect until a copy thereof shall be filed with the county planning board.
* * *
Copies of all development regulations and any revisions or amendments thereto shall be filed and maintained in the office of the municipal clerk.
[N.J.S.A. 40:55D-16.]
The unmistakable and plain language of the statute makes clear that until someone, not necessarily a municipal agent, presents a development regulation to the county planning board, and the county planning board files it,[9] the regulation is not effective. See Burcam Corp. v. Planning Bd. of Medford, 168 N.J.Super. 508, 512, 403 A.2d 921 (App.Div.1979); Millburn Twp. v. Short Hills Assoc., 23 N.J.Tax 311, 317 (Tax 2007). Thus, the Board argues that during all pertinent timesthroughout the hearings and determination of the Board, and the trial in the Law Division the only effective land use ordinance in Lebanon did not permit billboards. Accordingly, the Board claims that any determinations made regarding conditional use variances relating to a billboard during that period are nullities. Conversely, CBS claims that the Board is estopped from making these arguments because the applicant should not be penalized for what it describes as "the Borough's negligence."
Unlike Burcam Corp., where a previously unfiled development regulation was eventually filed with the Burlington County Planning Board during the pendency of the plaintiff's site plan application, in our case Lebanon never filed Ordinance No. 2007-04. The ostensible reason for never filing was first explained as an oversight, and then when the appropriate municipal officials became aware of this failure to filenot until July 2009Lebanon had already impliedly repealed Ordinance No. 2007-04, arguably making its belated filing an exercise in futility. Thus, the application of a relation-back principle is impossible.
For almost a half-century, our State's public policy jurisprudence has expressly insisted that governmental agents and units of government observe certain standards and normsparticularly during litigationthat are beyond reproach. See F.M.C. Stores Co. v. Borough of Morris Plains, 100 N.J. 418, 426, 495 A.2d 1313 (1985) (prohibiting a municipality from taking litigational advantage of another party under the "turn square corners" doctrine); Gruber v. Mayor and Twp. Comm., 73 N.J.Super. 120, 127, 179 A.2d 145 (App. Div.), aff'd, 39 N.J. 1, 186 A.2d 489 (1962) (applying an equitable remedy against government in the interest of holding the municipality to a standard of "rectangular rectitude"). We believe that the unique circumstances of this case inexorably militate *1165 in favor of the application of such an estoppel-like remedy that will validate the effectivenessat least during the period between its adoption and its implicit repealof the substantive provisions of unfiled Ordinance No. 2007-04.
There is no dispute that Ordinance No. 2007-04 was not filed at any time during the proceedings before the Board or the trial conducted in the Law Division. Each side criticizes the other for not detecting this unfortunate state of affairs sooner. The Board suggests that CBS should have discovered the lack of a filed ordinance when it conducted its due diligence before filing the development application. CBS conversely suggests that the Board had an independent obligation to inquire into its authority to act before permitting the extended development application process and litigation in the Law Division to progress.
We need not engage ourselves in finding fault or assigning blame to the parties. Indeed, it was the unintended default of non-parties, the Borough of Lebanon and its agents, that brought about this jurisprudential quagmire. The reasonable expectation of the parties and the public at large was that an agent of the Borough would perform the ministerial act of transmitting Ordinance No. 2007-04 to the Hunterdon County Planning Board for filing. See Millburn Twp. v. Short Hills Associates, supra, 23 N.J. Tax at 317 (noting that the party responsible for filing a duly adopted zoning ordinance with the county planning board is the municipal clerk).
The record developed in this case points to a single reason for the non-filing: human error. There is not even a whisper of evidence to suggest purposeful inaction by the municipality or its agents. Nevertheless, significant private and public rights have been affected, which require our appropriate judicial response.
One of the hallmarks of the "turn square corners" doctrine is that its application is not dependent upon a finding of bad faith. Instead, it focuses the judicial inquiry upon whether government seeks an unfair "litigational advantage." Here, that is exactly what the Board seeks. We will not tolerate the Board's purposive action of advocating the nullity of its own ordinance, particularly when it seeks to take advantage of the municipality's gaffe. We do not mean to suggest that governmental litigants are obliged to benignly surrender when they are adversaries against private parties in court. However, by using the Borough's non-filing as a bootstrap, the Board's contention seeks to succeed upon a mere tactical advantage, something it should be loath to do. In re Appeal of Howard D. Johnson Co., 36 N.J. 443, 446, 177 A.2d 756 (1962). The manifest injustice of subscribing to the Board's advocacy should be apparent, and we decline to become an instrument of mischief by deeming all of the previous proceedings mere exercises in futility. Klumpp v. Borough of Avalon, 202 N.J. 390, 413, 997 A.2d 967, 980 (2010) (taking for granted government's requirement to turn square corners in an inverse condemnation action); Menges v. Dentler, 33 Pa. 495, 500 (1859) ("Men naturally trust in their government, and ought to do so, and they ought not to suffer for it").
We are fortified in this conclusion because, as recognized by Ordinance No. 2007-04 itself, the regulation of billboards implicates fundamental First Amendment rights. Cf. State v. DeAngelo, 197 N.J. 478, 485-86, 963 A.2d 1200 (2009) (recognizing the difference between commercial speech and the heightened protection given to speech in public forums, such as parks, streets, and sidewalks). Even Ordinance No. 2009-03with its twelve-page preamble and eighty-six whereas clauses *1166 is cognizant of the significant First Amendment implications of billboard regulation. We by no means attempt to analyze the free speech issues relevant to CBS's application, and we expressly eschew any determination concerning the constitutional or other validity of Ordinance No. 2009-03. Nevertheless, the Board's invocation of N.J.S.A. 40:55D-16 in the context of this appeal is unjust. Accordingly, we agree with the implied conclusion of the trial judge, and hold that Ordinance No. 2007-04's effectiveness may not be raised by the Board in defense of its position. Thus, for purposes of this case, Ordinance No. 2007-04 shall be deemed effective as of the date of its adoption, notwithstanding the failure to file with the county planning board.

C.
Having removed the specter of N.J.S.A. 40:55D-16 from the Board's armory of litigation tactics, we must still resolve the impact, if any, of Ordinance No. 2009-03 on this case. That is, by treating Ordinance No. 2007-04 as if it had been properly filed and effective, the parties still remain at odds over the effect of the more recent legislative enactment. This dispute's resolution entails an application of the time of decision rule.
Generally, an appellate court "`will apply the statute in effect at the time of its decision, at least when the legislature intended that its modification be retroactive to pending cases.'" Riggs v. Twp. of Long Beach, 101 N.J. 515, 521, 503 A.2d 284 (1986) (quoting Kruvant v. Mayor & Council of Cedar Grove, 82 N.J. 435, 440, 414 A.2d 9 (1980)), rev'd on other grounds, 109 N.J. 601, 538 A.2d 808 (1988). "The purpose of the principle is to effectuate the current policy declared by the legislative bodya policy which presumably is in the public interest." Kruvant, supra, 82 N.J. at 440, 414 A.2d 9.
The time of decision rule, with limited exceptions,[10] permits a municipality to make changes to a zoning ordinance at any time, even during the midst of a development application, and even if the ordinance is adjusted in direct response to a particular application. Eastampton Ctr., LLC v. Planning Bd. of Twp. of Eastampton, 354 N.J.Super. 171, 196-97, 805 A.2d 456 (App.Div.2002). It is acceptable for a local legislature to change its zoning ordinance after an application has been filed, and even after a building permit has been issued, because the amendatory provision will only be enforced as long as the applicant did not substantially rely upon the issuance of the building permit. Burcam Corp. v. Planning Bd. of Medford, supra, 168 N.J.Super. at 512, 403 A.2d 921.
We do not believe that CBS is inoculated from the effects of the time of decision rule on the basisas it argues in its supplemental reply briefthat "the adoption of the prohibitive ordinance in 2009 is ineffective where there is a wrongful denial." CBS claims that its position is fortified by S.T.C. Corp. v. Planning Bd. of Twp. of Hillsborough, 194 N.J.Super. 333, 476 A.2d 888 (App.Div.1984) and Dinizo v. Planning Bd. of Town of Westfield, 312 N.J.Super. 225, 711 A.2d 425 (Law Div.1998), which involved the accrual of vested rights by dint of qualifying for either site plan or subdivision approval. We disagree.
We acknowledge that "when one party has obtained a vested right under the prior law, the later law may not be applied if this will divest that right." Riggs, supra, 101 N.J. at 521, 503 A.2d 284 *1167 (citing S.T.C. Corp., supra, 194 N.J.Super. at 335-36, 476 A.2d 888). "[O]nce the final site plan application was approved, [the developer's] rights were vested and the [municipality] could not thereafter impose further conditions on that approval." Britwood Urban Renewal, L.L.C. v. City of Asbury Park, 376 N.J.Super. 552, 570, 871 A.2d 129 (App.Div.2005) (citing S.T.C. Corp., supra, 194 N.J.Super. at 336, 476 A.2d 888). See also N.J.S.A. 40:55D-47(e); -49(a); -52(a).
In this case, however, CBS never obtained statutory or other vested rights because it was never definitively entitled to site plan approval in the first place. This is due to the fact that such approval could only have been obtained if there had been complete fidelity to Lebanon's zoning and site plan review ordinances or if CBS had qualified for all necessary variances or exceptions. As we have already determined, CBS has yet to demonstrate its entitlement to conditional use variances relating to illumination, which will necessarily comprise a significant component of the provisional remand proceeding. Even if CBS can demonstrate that it meets the ordinance's lighting conditions during that proceeding by presenting persuasive evidence of tangible mitigation, it has failed to do so thus far, and therefore earned no vested rights, even from the trial court's limited grant of the two setback conditional use variances.
Based upon the record in this case, even in the context of what we have already said about government's obligation to comport itself with integrity and forthrightness, we remain unpersuaded that the time of decision rule should be equitably swept aside, with a single caveat. We see nothing present that "would undermine special equities without accomplishing any offsetting service to the public interest in the zoning sense." Urban Farms, Inc. v. Borough of Franklin Lakes, 179 N.J.Super. 203, 217, 431 A.2d 163 (App.Div.), certif. denied, 87 N.J. 428, 434 A.2d 1099 (1981). It is one thing to deploy the "turn square corners" doctrine to prohibit a governmental litigant from taking unfair advantage of another during litigation; it is quite another to judicially repudiate the time of decision rule without a demonstration of a significant benefit to the public at large prior to the effective date of L. 2010, c. 9 (N.J.S.A. 40:55D-10.5). Our equitable compass is unaffected by CBS's private interests, which do not trump the public interest as presently expressed in Ordinance No. 2009-03.
Although we appreciate that there are many similarities between this appeal and the circumstances in Urban Farms, Inc., there are overriding and distinguishing differences. First, the Urban Farms, Inc. court declared the amendatory ordinance in Franklin Lakes that sought retroactive application invalid on equal protection grounds because of its "invidious and unjustifiable distinction made ... between similar uses." Id. at 217, 431 A.2d 163. We have no correlative record before us to make such a determination. Second, because Urban Farms, Inc. involved an inherently beneficial usea nursing homethere was an absence of evidence of "the customary public-interest underpinnings of retroactive application" to suggest that "the public interest would be more advantaged by now eliminating that use than it would be by continuing to permit it." Id. at 220-21, 431 A.2d 163. In the instant matter, even though First Amendment issues are involved, a billboard is not an inherently beneficial use, and we would not, without an adequate record, attempt to strike a public-interest balance between CBS's private interest and the public interest. Lastly, special equities abounded in Urban Farms, Inc., including a seven-year quest by the developer that included *1168 a once-obtained special exception and later vindication in the trial court. Id. at 221-22, 431 A.2d 163. Here, CBS's travails have not been as long or as arduous, and in any event, do not equate with any special equities.
We cannot say with any degree of confidence that CBS or the situation in which it finds itself shares the same or similar attributes with the Urban Farms, Inc. developer. Accordingly, we discern no principled path for us to take that would allow this court to obviate the ordinary application of the time of decision rule. Nevertheless, we are aware that CBS substantively challenged Ordinance No. 2009-03 in an action in lieu of prerogative writs,[11] but that litigation has been consensually dismissed without prejudice, placing the dispute over the ordinance's validity into a state of suspended animation. If that action is reinstated or seasonably filed anew, and CBS's challenge succeeds, then the application of Ordinance No. 2009-03 under the time of decision rule will be undone, and our determination to vindicate the effectiveness of Ordinance 2007-04 will spring forth. On the other hand, CBS may decline to resurrect its action against the municipality regarding the ordinance or it may be unsuccessful in declaring the billboard prohibition invalid. In either of these latter circumstances, Ordinance No. 2009-03 will, of course, apply, requiring CBS to obtain a (d)(1) variance if it seeks to establish and operate a billboard in Lebanon.
Thus, our remand to the Planning Board is truly provisional. The actual remand proceedings need not commence unless and until there is a final determination invalidating Ordinance No. 2009-03's prohibition on billboards. We take pains to declare that we take no position regarding the outcome of that action and nothing that we have stated in this opinion is intended to presage a particular result.
Affirmed in part; reversed in part; and provisionally remanded to the Board in accordance with the terms of this opinion. We do not retain jurisdiction.
NOTES
[1] Defendant is a consolidated land use agency existing pursuant to N.J.S.A. 40:55D-25(c)(1). The municipality itself is not a party to this action.
[2] Although a vehicle rental business had once operated at the site, the evidence indicated that such business ceased operations several years earlier.
[3] The original site plan drawing contained a "Sign Face Illumination Chart" (illumination chart), but it only plotted the illumination of the billboard's sign face, not beyond. In its amended submission, CBS's illumination chart revealed illumination values for a distance of six feet beyond the perimeter of a proposed sign face. The data for the illumination chart was supplied to Zepponi by the lighting fixture manufacturer, which Zepponi described as "essentially the highest state-of-the-art in terms of lighting."
[4] One definition of a foot-candle is found in the glare performance standards of the New Jersey Meadowlands Commission: `Foot-candle' means the unit of illumination on a surface one square foot in area on which there is a uniform distribution of light having a candlepower of one candela. N.J.A.C. 19:4-7.7. For comparative purposes, we note that lighting in a cell in a federal prison must, at a minimum, be twenty foot-candles. Gates v. Cook, 376 F.3d 323, 342 (5th Cir.2004). At twenty foot-candles, proper activities, such as reading, can take place. Id.
[5] We have no occasion at this time to analyze the potential effect upon CBS's application of L. 2010, c. 9 (N.J.S.A. 40:55D-10.5), which amends the MLUL to provide, "[n]otwithstanding any provision of law to the contrary, those development regulations which are in effect on the date of submission of an application for development shall govern the review of that application for development and any decision made with regard to that application for development," because the legislation expressly provides that it is not effective until "one year next following" May 5, 2010. See Andrew T. Fede, Legislature Revises the Time of Decision Rule for Land Development Applications, 200 N.J.L.J. 877, June 28, 2010.
[6] The Board also noted its view that CBS had not adequately demonstrated the absence of other billboards within 1,000 feet of the proposed structure. We agree with the trial court that CBS's evidence on this issue satisfied the condition and was unassailable.
[7] The Board's resolution refers to the light spillover as "significant," relying upon a single stray comment of its engineer. We cannot say on this record what objective standards the engineer or the Board utilized in reaching this critical value judgment. We elect to permit CBS and the Board to grapple with all aspects of the illumination conditions in the provisional remand.
[8] For example, CBS should respond, to the extent it believes necessary, to those items identified by the Board in its resolution as failures of proof. CBS must also explicitly advise the Board as to the configuration for which it seeks approval. We mention this because the record contains confusing and contradictory references about a change in the location of the billboard, and the effect of that change upon required variances.
[9] When read in pari materia with the MLUL, N.J.S.A. 40:27-6.10 appears to compel county planning boards to accept for filing all development regulations of municipalities "[i]n order that county planning boards shall have a complete file of the planning and zoning ordinances of all municipalities in the county."
[10] See William M. Cox, New Jersey Zoning and Land Use Administration, § 28-3.5(b) at 666-70 (2010) (cataloguing exceptions such as court-ordered time limits; equitable considerations; statutory vested rights; and improper ordinances).
[11] Our information about this later litigation comes from the parties' representations during oral argument. We have not been provided with a copy of any pleadings in that matter.