**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0585-18T3

JANET SADOWE, as Trustee
of the Trust U/W of DENIS L.
SADOWE,

     Plaintiff-Appellant,

v.

AUTOZONE NORTHEAST, LLC,
ROUTE 37 EAST ASSOCIATES,
LLC, and the TOMS RIVER
TOWNSHIP PLANNING BOARD,

     Defendant-Respondents.

_____

Argued December 9, 2019 – Decided September 2, 2020

Before Judges Ostrer and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-3221-17.

Joseph Michelini argued the cause for appellant (O'Malley, Surman & Michelini, attorneys; Susan E. DiMaria, on the briefs).

Francis J. DeVito argued the cause for respondents Autozone Northeast, LLC and Route 37 East Associates

(Francis J. DeVito, PA, attorneys; Francis J. DeVito, on the brief).

Kelsey A. McGuckin-Anthony argued the cause for respondent Toms River Township Planning Board (Dasti, Murphy, McGuckin, Ulaky, Koutsouris & Connors, attorneys; Gregory P. McGuckin, of counsel; Kelsey A. McGuckin-Anthony, on the brief).

PER CURIAM

Plaintiff Janet Sadowe challenged the Toms River Township Planning Board's approval of a site plan and a side-yard variance to permit defendant AutoZone Northeast, LLC (AutoZone) to construct a 6,194-square-foot retail store on a 1.08 acre lot on eastbound Route 37. She appeals from the trial court's order dismissing her complaint in lieu of prerogative writs. Renewing arguments she presented to the trial court, Sadowe contends the notice of hearing was deficient, and AutoZone failed to satisfy the requisites for its bulk variance under paragraph 1 or 2 of N.J.S.A. 40:55D-70(c). She also contends the Board demonstrated bias toward her, and improperly barred her expert from testifying about certain environmental issues. Having considered these arguments in light of the record and applicable legal principles, we affirm.

AutoZone's property — formally, Lot 32.01, Block 507.02 located at 797 Route 37 East (the Property) — constitutes a rectangular notch of a larger property to the east and south, occupied by Life Storage, a self-storage facility.

To the west of the Property are a Burger King, which fronts Route 37, and a Clarion Hotel, behind it. AutoZone proposed to demolish a defunct and dilapidated garden center on the Property to make way for its new retail store. The testamentary trust of which Sadowe is trustee owns the Burger King property. Sadowe was the sole objector to AutoZone's application.

The Property is twenty-five feet narrower than the 150-foot minimum width and frontage the local zoning ordinance requires. The garden center had a variance from that requirement. AutoZone's proposed use — the retail sale of auto parts and accessories — is permitted in the Rural Highway Business Zone. AutoZone's building would cover roughly thirteen percent of the lot, well less than the permitted twenty-percent coverage that is permitted. The Board ultimately granted AutoZone a variance that permitted it to provide a 14.33-foot side yard setback from the storage facility property, instead of the required 20-foot setback.

In a cogent written opinion, Assignment Judge Marlene Lynch Ford affirmed the Board's decision and dismissed the complaint. In reviewing that decision, we apply the same standard as the trial court in assessing Sadowe's challenge to the Board's decision. See CBS Outdoor, Inc. v. Borough of Lebanon Planning Bd./Bd. of Adjustment, 414 N.J. Super. 563, 577 (App. Div. 2010).

"Simply stated, a reviewing court must determine whether the Board followed statutory guidelines and properly exercised its discretion." Id. at 578. Put another way, a person challenging a variance must demonstrate the board's decision was "arbitrary, capricious, or unreasonable." Northgate Condo. Ass'n v. Borough of Hillsdale Planning Bd., 214 N.J. 120, 145 (2013). We grant the Board "wide latitude" in exercising its discretion because it knows its local conditions. Jock v. Zoning Bd. of Adjustment, 184 N.J. 562, 597 (2005). We review de novo questions of law, such as whether the Board had jurisdiction over a matter. Pond Run Watershed Ass'n v. Twp. of Hamilton Zoning Bd., 397 N.J. Super. 335, 350 (App. Div. 2008).

We turn first to Sadowe's contention that AutoZone's initial public notice violated N.J.S.A. 49:55D-11, thereby depriving the Board of jurisdiction, and rendering its action void. Sadowe contends the notice was so general that it failed to apprise the public what AutoZone sought from the Board. She also contends a second detailed notice, which AutoZone submitted along with a revised plan, did not cure the first notice's infirmity. We disagree.

AutoZone's first notice announced its intention to construct a "retail auto supply parts and accessories store of approximately 7,382 sq. ft." on the

identified block and lot.[1]  The notice disclosed the time and place of the meeting, advised that the public may appear to comment or object, and that the maps, plans, and related documents were available for review.  However, in contrast to a limited list of variances and waivers that AutoZone submitted to the Board, its public notice referred to an extensive number of potential variances "as may be required."

In its list to the Board, AutoZone stated that it proposed to retain the existing variances from the minimum lot width and minimum lot frontage requirements.  AutoZone sought new variances from the twenty-foot single-side-yard setback and fifty-foot both-sides setback requirements, to allow a five-foot setback from the storage facility property.  AutoZone also sought variances from sign height and size requirements.  In addition, AutoZone sought a waiver from the minimum curb radius for right turns and from the ban on dead end parking.

In its public notice, AutoZone stated that it had filed an application "for a simultaneous minor and/or standard site plan approval and/or simultaneous

_____

[1]  Although AutoZone Northeast LLC is the applicant, the notice identified "Auto Zone, Inc." as the provider of the notice.  For convenience, we use "AutoZone" to refer to either entity.

preliminary and final site plan approval." With regard to variances, the notice stated that AutoZone applied for:

> a parking variance for size, number and locations, a lighting variance, bulk variance for building height, lot area, width, depth and setback, side yards, buffers, access and drive aisle size and locations, loading area requirements and size, building area, screening requirements, tree cutting and tree replacement requirements, landscape requirements, impervious lot coverage, FAR, and pylon, monument and façade signs and use of neon and a subdivision and/or lot consolidation <u>as may be required</u> and sight triangle requirements and variances and waivers, all specifically as otherwise provided for in the Township ordinances and any other applicable variances, waivers from the requirements of the land use development ordinances for the Township of Toms River that may be required . . . .
>
> [(Emphasis added).]

At the initial hearing, the Board rejected Sadowe's counsel's contention that the public notice was deficient because it was overbroad. The Board voted 5-0 to accept the notice and exercise jurisdiction. The Board heard from AutoZone's engineer, planner, and traffic consultant. Sadowe's counsel vigorously cross-examined them, raising issues about the building's size; the need for the setback variances; and traffic circulation and access on the Property, particularly involving firetrucks and large delivery trucks. The Board agreed to continue the hearing on a subsequent date.

6

Before that second hearing occurred, AutoZone revised its plan by reducing its proposed building to 6,194 square feet, altering its parking configuration, and widening its side yards. Aside from retaining the frontage and minimum lot width variances, AutoZone proposed only a variance to allow a 14.33 foot side-yard setback (instead of the required twenty feet) along its boundary with the self-storage facility's property. AutoZone sent out another notice specifically identifying those three variances, disclosing to the reader both the existing requirement and its proposed deviation. The notice also identified the waivers for minimum curb radii and dead end parking and identified several other potential waivers. It stated that AutoZone would apply for "other variances and waivers that may be required." As it did initially, the notice listed the property's location; when and where the Board would hold its hearing; and when and where maps and documents could be reviewed.

"[P]roper public notice in accordance with the requirements of the MLUL is a jurisdictional prerequisite for a zoning board's exercise of its authority." Pond Run Watershed Ass'n v. Twp. of Hamilton Zoning Bd. of Adj., 397 N.J. Super. 335, 350 (App. Div. 2008). The Municipal Land Use Law (MLUL) requires applicants to give notice to the public, N.J.S.A. 40:55D-12(a), and to owners of properties within two-hundred feet of the property that is the subject

of the hearing, N.J.S.A. 40:55D-12(b).  Along with identifying the property to be discussed, stating when and where the hearing will be held, and when and where maps and documents may be viewed, the notice must state "the nature of the matters to be considered."  N.J.S.A. 40:55D-11.  That last aspect of a notice is at issue here.

The notice must "fairly apprise" the public and neighboring property owners of the "nature and character of the proposed development."  Perlmart of Lacey, Inc. v. Lacey Twp. Planning Bd., 295 N.J. Super. 234, 237 (App. Div. 1996).  The notice "should fairly be given the meaning it would reflect upon the mind of the ordinary layman, and not as it would be construed by one familiar with the technicalities solely applicable to the laws and rules of the zoning commission."  Id. at 238 (internal quotations omitted).

We held notices inadequate when they failed to describe the applicant's proposed use.  Id. at 238.  In Perlmart, a notice that vaguely stated the applicant intended to create three commercial lots fell short, by failing to mention it proposed to build a K-Mart shopping center.  Id. at 239.  In Pond Run, a notice that generally referred to retail and office uses was deficient by not mentioning plans to develop a large restaurant that served alcoholic beverages.  397 N.J. Super. at 352-53.

However, we rejected the contention that the <u>Perlmart</u> notice was deficient because it "did not specify all of the particular variances required." 295 N.J. Super. at 237 n. 3. We held, "[W]e do not believe the Legislature intended the required public notice to be that specific." <u>Id.</u> We have reiterated that view. <u>See</u> <u>Shakoor Supermarkets, Inc. v. Old Bridge Twp. Planning Bd.</u>, 420 N.J. Super. 193, 202 (App. Div. 2011).[2]

Notably, AutoZone's notice did not fail to mention the variances it sought. Sadowe contends that AutoZone's notice was deficient because it also mentioned variances it did not seek. But, the notice's overbreadth did not make it "useless," as Sadowe contends. While it is conceivable that a notice may be so overbroad as to obscure the true "nature of the matters to be considered," that is not this case. The notice specified that AutoZone requested whatever approvals were needed to enable it to construct a 7,382 square foot auto parts store on its plot of land. It would certainly have been preferable in this case for AutoZone to

---

[2] Sadowe relies on a prominent treatise that states, without reference to authority, "It is important that all required variances should be mentioned in the notice. Thus, if a bulk variance is required to locate a building within a side yard, for example, and the application also requires a height variance, both of such variances should be mentioned in the notice." Cox & Koenig, New Jersey Zoning and Land Use Administration, § 18.1.2(b)(2) (2020). As we note below, it may certainly be good practice to mention "all required variances," but <u>Perlmart</u> expressly stated it was not required.

identify the same variances and waivers it included in the list it provided the Board, with the added notice that it would seek other variances and waivers as might be necessary. However, AutoZone's overinclusive list was likely to provoke greater public interest, rather than less, by mentioning such things as tree cutting, buffers, and building heights, as well as the side yard setbacks and signage relief it genuinely sought. It thus served the purpose of alerting the public of what the Board was going to consider.

In any event, we are satisfied that AutoZone cured any deficiency in its original notice, when it provided a second notice to accompany its revised plan. A new notice for the continuation of a hearing is generally not required. Pond Run, 397 N.J. Super. at 349-50. However, when an amended application differs substantially from the original, a board may treat it as a new application, requiring a new notice. Cox & Koenig, § 14-2.1 at 293. Although AutoZone's amended plan was more in the nature of a revision, than a substantially different application, it provided a new notice as if it were substantially different. Although Sadowe highlights that the Board did not "start over" when it reconvened, the Board heard additional testimony focused on the new plan. A member of the public who was not prompted to attend the first meeting, would not have been prejudiced had he or she chose to attend the second, based on the

new notice.  In sum, we reject Sadowe's challenge to AutoZone's notice and the Board's jurisdiction

We next address plaintiff's argument that the Board acted arbitrarily and capriciously in granting the side yard variance under N.J.S.A. 40:55D-70(c)(1) and (c)(2).  AutoZone sought its variance under (c)(1) on the ground the Property's "exceptional narrowness, shallowness or shape . . . would result in peculiar and exceptional practical difficulties to, or exceptional and undue hardship."  N.J.S.A. 40:55D-70(c)(1).  And it sought its variance under (c)(2) on the ground the "the purposes of [the MLUL] . . . would be advanced by a deviation from the zoning ordinance requirements and the benefits of the deviation would substantially outweigh any detriment."  N.J.S.A. 40:55D-70(c)(2).  A variance under (c)(1) or (c)(2) "also must satisfy the familiar negative criteria" that is, that the variance "'can be granted without substantial detriment to the public good and will not substantially impair the intent and purpose of the zone plan and zoning ordinance.'"  Lang v. Zoning Bd. of Adjustment, 160 N.J. 41, 57 (1999) (quoting N.J.S.A. 40:55D-70(d)).

Here, the record supported the Board's finding that a (c)(1) hardship existed.  The Board appropriately focused "on whether the unique property condition relied on by the applicant constitutes the primary reason why the

11

proposed structure does not conform to the ordinance." Lang, 160 N.J. at 56. The Board properly found the need for the variance arose from the property's condition, not the owner's personal hardship. See Jock, 184 N.J. at 590. The property was narrow and sandwiched between two existing developments. AutoZone was not required to show no alternative economic use of the Property was possible, or that it would have "complete inutility" without the variance. Ten Stary Dom Partnership v. Mauro, 216 N.J. 16, 29 (2013).

The Board noted that even after reducing the proposed building's size, AutoZone needed to deviate from the required side-yard setback. The Board found that "any reasonable commercial use" of the narrow lot "would in all likelihood require some type of setback relief." The Board found that AutoZone could not obtain any additional lands to meet the lot frontage requirement. Space was needed to accommodate truck traffic to the back of the building. Notably, the owners of the self-storage facility, which would be impacted by the side-yard variance, did not object during the public hearing. The Board found there would be little impact on that neighbor, because activities would be limited on that side of AutoZone's building, and AutoZone planned to provide additional landscaping. Furthermore, the proposed building covered only thirteen percent

of the lot, compared to the allowable twenty percent; and the building had a 100-foot setback, when only thirty feet was required.

The record also supports the Board's grant of the (c)(2) variance. The grant of a (c)(2) variance "must actually benefit the community in that it represents a better zoning alternative for the property." Kaufmann v. Planning Bd. for Warren Twp., 110 N.J. 551, 563 (1988). A Board must focus "on the characteristics of the land that present an opportunity for improved zoning and planning that will benefit the community." Ibid. (emphasis omitted).

AutoZone established the variance would advance the MLUL's purposes and the project's benefits would substantially outweigh any detriment. AutoZone demonstrated its development "present[ed] an opportunity to put the property more in conformity with development plans and advance the purposes of zoning." Ten Stary Dom, 216 N.J. at 30.

The Board noted that AutoZone's proposed development would provide desired retail development on Route 37, in conformity with the township's plan. It would also replace an existing dilapidated, vacant structure. The Board noted that although the garden center's structure was smaller than the proposed AutoZone building, it had a greater negative impact on the zoning plan because

it utilized outside storage pursuant to a variance. Thus, the AutoZone development would have a positive impact on the community.

With respect to the variance under (c)(1) or (c)(2), the Board found, with sufficient support in the record, that the development would have no negative impact on the zoning plan, as it involved only a minor setback deviation involving two commercial properties. In sum, we reject Sadowe's challenge to the setback variance.

Sadowe's remaining points require only brief comment. We reject her argument that the Board improperly barred her professional planner from testifying about the contents of an environmental contamination report prepared for the site three years earlier.

The Rules of Evidence are not binding on a planning board. N.J.S.A. 40:55D-10(e). The Board's reasonable judgment to accept or reject an expert's testimony is binding on appeal. Ocean County Cellular Tel. Co. v. Twp. of Lakewood Bd. of Adj., 352 N.J. Super. 514, 537 (App. Div. 2002). The Board reasonably concluded that the planner's environmental coursework, in her Master's Program in planning, did not qualify her as an expert of the subject matter contained in the report. The Board nonetheless admitted the report into

evidence and accepted the planner's testimony on other matters within her planning expertise. We discern no error.

Finally, we reject Sadowe's challenge to the Board's action on the ground it demonstrated bias toward her. It is fundamental that a planning board must fairly consider the views of objectors and applicants who come before it. And, planning board members may not sit on matters in which they have a direct or indirect private interest. Randolph v. City of Brigantine Planning Bd., 405 N.J. Super. 215, 225 (App. Div. 2009). An appearance of impropriety, in addition to an actual conflict, may disable a member from sitting. Id. at 226.

However, isolated comments about hamburger restaurants, which Sadowe highlights, fall far short of demonstrating bias. Also, the Board did not demonstrate bias against her by observing she was the only objector, although the side-yard variance did not directly affect her property. The Board was appropriately assessing the impact of the variance. Sadowe also complains that AutoZone's attorney signed his emails to the Board's secretary in an unprofessional manner. Although we do not condone the practice, it does not reflect favoritism by the Board. Sadowe also complains that the AutoZone attorney was given an opportunity to review a draft of the resolution, and her

attorney was not.  We need not address the propriety of the practice, as it does not undermine the fairness of the Board's determination to grant the variance.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0585-18T3