71 A.3d 762

TSI EAST BRUNSWICK, LLC, PLAINTIFF–APPELLANT, v. ZON-ING BOARD OF ADJUSTMENT OF TOWNSHIP OF EAST BRUNSWICK AND NEW VORNADO/SADDLE BROOK, LLC, DEFENDANTS–RESPONDENTS.

Argued April 17, 2013—Decided July 23, 2013.

*John J. Lamb* argued the cause for appellant (*Beattie Padovano*, attorneys; *Mr. Lamb* and *Ira E. Weiner*, of counsel; *Mr. Lamb, Mr. Weiner*, and *Daniel L. Steinhagen*, on the briefs).

*Kevin J. Moore* argued the cause for respondent New Vornado/Saddle Brook, LLC (*Sills Cummis & Gross*, attorneys; *Mr. Moore* and *Peter M. Flannery*, on the brief).

*James A. Tarella* argued the cause for respondent Zoning Board of Adjustment of the Township of East Brunswick (*Tarella & Liftman*, attorneys).

Justice HOENS delivered the opinion of the Court.

In this appeal we address a single, precisely drawn question that arises only in the context of applications made pursuant to

the Municipal Land Use Law (MLUL), *N.J.S.A.* 40:55D-1 to -163, for conditional use variances. That question is whether, in considering an application for a conditional use variance, *N.J.S.A.* 40:55D-70(d)(3), the applicant must prove the negative criteria, *see N.J.S.A.* 40:55D-70, by an enhanced quality of proofs.

## I.

The facts that are relevant to our analysis of the issue before us in this appeal are not in dispute. Defendant New Vornado/Saddle Brook, LLC (New Vornado) owns a large tract of land in East Brunswick. The property fronts on Route 18 South, which is a six-lane divided highway, and is located in East Brunswick's HC-2 (General Highway Commercial District) zone. The site is improved with a large shopping center that includes a home improvement store, a variety of retail establishments, and one vacant free-standing building, which New Vornado sought to convert into an LA Fitness health club.

The East Brunswick zoning ordinance permits non-profit health club facilities in the HC-2 zone, *see East Brunswick, N.J., Code* 228-176(H), but treats a health club facility that is operated for profit as a conditional use in the same zone, *see East Brunswick, N.J., Code* 228-176.1(D). As a result, because the LA Fitness facility would be operated for profit, it was required to comply with the relevant conditions established in the zoning ordinance. Central to the dispute before this Court is the condition imposed by the ordinance that prohibits such a facility from being located within 500 feet of any residence or residential zone. *East Brunswick, N.J., Code* 228-176.1(D)(1).

New Vornado's property is surrounded by commercial, warehouse, industrial, and office complexes. However, on the other side of Route 18, and behind other existing commercial buildings, there is a trailer park and a small residential neighborhood of approximately eight units. Because of where the vacant building proposed for the LA Fitness facility is placed on New Vornado's large tract of land, it is approximately 1,200 feet from the closest

of these residential units. However, when measured from the edge of the tract, as required by the zoning ordinance, *see ibid.* (specifying that measurement shall be made from "nearest boundary line of the lot on which the proposed use is to be located"), one or more of the residential units is within 500 feet of New Vornado's property. As a result, New Vornado filed an application seeking a conditional use variance to enable it to open the LA Fitness facility in spite of its failure to comply with the 500–foot distance requirement.

Plaintiff TSI East Brunswick, LLC (TSI) is the owner and operator of a New York Sports Club, a for-profit health club that is located in a shopping center across Route 18 from New Vornado's property. Plaintiff's property is also located in the HC–2 zone and its New York Sports Club facility is within 500 feet of a residential zone. That facility was built after plaintiff succeeded in securing a conditional use variance from the East Brunswick Zoning Board. Plaintiff was the principal objector to New Vornado's application for a conditional use variance. *See N.J.S.A.* 40:55D–70(d)(3).

The Zoning Board heard New Vornado's application over the course of three days, during which the applicant presented testimony of four witnesses, the most important of whom, for purposes of this appeal, was a professional planner. The planner testified about the location and layout of the New Vornado property and the placement within that site of the building that New Vornado proposed to convert for use as the LA Fitness facility. He observed that the applicant could have avoided the need for a conditional use variance had it subdivided the property to carve out the proposed LA Fitness building. As he explained, that approach would have created a separate lot that would have been in excess of 500 feet from any residence, thus making it a completely conforming conditional use.

The planner also testified that there would be "essentially no substantial negative" impacts on the residences within the 500–foot radius of the property. He based that opinion on several

considerations. He first explained that the fitness facility itself is well in excess of the 500–foot limit imposed by the ordinance. He also observed that Route 18 serves as a barrier between the facility and the residences, pointing out that, in planning terms, the roadway independently creates major impacts on those residences. He further testified that, in contrast to the other recreational for-profit conditional uses listed in the ordinance, such as movie theaters, skating rinks, and bowling alleys, the LA Fitness facility would be a less intense, lower-activity use.

In further support of his opinion that the variance should be granted, the planner pointed to the New York Sports Club, which he described as providing him with a "laboratory example" of the insignificant impact that the proposed facility would have on any of the residences. He pointed out that the New York Sports Club is within 500 feet of 180 residences, is accessed by a road that runs through the residential neighborhood, and is not separated from any of them by Route 18, the roadway that would buffer the residential area from the proposed LA Fitness facility. The planner reasoned that, although the New York Sports Club is far closer to residences and would, therefore, be expected to have a more immediate impact on them, it did not appear to have had any adverse effect on the residential uses.

Relying on his understanding of the standards to be applied to an application for a conditional use variance, the planner focused on the negative criteria. *See Coventry Square, Inc. v. Westwood Zoning Bd. of Adjustment*, 138 *N.J.* 285, 297–98, 650 *A.2d* 340 (1994) (identifying standards to apply to evaluation of application for (d)(3) conditional use variance). He opined that, in evaluating the negative criteria, the enhanced quality of proofs ordinarily demanded for a use variance, *see Medici v. BPR Co.*, 107 *N.J.* 1, 4, 526 *A.2d* 109 (1987), did not apply. In his evaluation of the first prong of the negative criteria, the planner considered "all the traditional land use impacts [on other properties] in terms of traffic, light and air, [and] noise," and concluded that the proposed

LA Fitness facility "would not have any impact whatsoever on those few residential uses" within the 500–foot radius of the tract.

In addressing the second prong of the negative criteria, the planner examined the municipality's master plan and zoning ordinance. He testified that "the land use plan essentially zones both sides of Route 18 as a highway commercial designation and, according to [the] master plan, it was to be responsive to the Route 18 regional economy." The master plan, in his opinion, "recognized that Route 18 is a major road, draws from a large area[,] ... [and that the] highway commercial zone [anticipated] high density uses." Comparing the permitted uses, which include "department stores, retail offices, services, governmental buildings ... [and] private non-profit recreational buildings," with the conditional uses, which include for-profit recreation and amusement facilities, the planner concluded that, in general, the permitted uses were actually ones with "higher peaks in terms of activity[.]" He therefore opined that the application for the conditional use variance should be granted because it would not impose a substantial detriment upon the public good and would not substantially impair the zone plan or the zoning ordinance.

Plaintiff called its own planning expert to testify. Its expert first offered the opinion that the LA Fitness facility required a use variance, see N.J.S.A. 40:55D–70(d)(1), rather than a conditional use variance, see N.J.S.A. 40:55D–70(d)(3). He reached that conclusion because, in his view, the condition relating to the 500–foot distance effectively prohibited New Vornado from putting the fitness club in the location it chose. Using the more rigorous standard applicable to a (d)(1) use variance, compare Medici, 107 N.J. at 4, 526 A.2d 109 (establishing quality of proofs required for (d)(1) use variances), with Coventry Square, supra, 138 N.J. at 297–98, 650 A.2d 340 (identifying standards to apply to evaluation of application for (d)(3) conditional use variance), plaintiff's expert testified that New Vornado failed to satisfy the level of proof required for the variance.

Specifically focusing on the negative criteria, plaintiff's expert planner opined that the evidence offered in support of the application fell short. In part, he pointed out that the governing body of the municipality was aware of the earlier decision of the Zoning Board to grant a conditional use variance that allowed the New York Sports Club to be built. He reasoned that because the zoning ordinance was not thereafter amended to eliminate the 500–foot distance requirement, the governing body must have intended that it be enforced. He therefore asserted that the Zoning Board should conclude that any further applications for relief from that condition would be inconsistent with the zone plan and should be denied.

The Zoning Board granted New Vornado's application for a conditional use variance, embodying its findings and conclusions in a resolution adopted May 6, 2010. The Board first rejected plaintiff's argument that a (d)(1) use variance was required, observing that the zoning ordinance designates the proposed for-profit recreational entity as a (d)(3) conditional use. The Board further recognized that a conditional use variance would be required because New Vornado's property, measured from the edge of the whole tract, is within 500 feet of residential properties. The Board determined that although those residences are located on the opposite side of Route 18, the proposal to operate a for-profit fitness center anywhere on the tract failed to comply with one of the conditions included in the zoning ordinance, thus necessitating consideration of an application for a conditional use variance.

Among the Board's factual findings were its observations that the proposed facility will "provide and promote healthful, recreational uses for the benefit of the local citizenry," that it would appropriately be "located in an existing building in a large shopping center" with "commercial development surrounding the location on all sides" and that the building where the health club will be located is situated on the site so that it is more than 1,200 feet from the nearest residence. Moreover, the Zoning Board observed that granting the requested variance would permit an

appropriate use and development of the specific piece of property and would maintain a desirable visual environment by allowing for redevelopment of a vacant building in an existing shopping center.

As required by the MLUL, the Zoning Board's evaluation of the negative criteria focused on the condition that the facility not be within 500 feet of residences. Concerning the first of the negative criteria, the Board found that the experience with TSI's New York Sports Club showed that the proposed use would "not impose any detrimental effects whatsoever upon the township or surrounding uses[.]" It observed that the New York Sports Club was only 200 feet away from residential properties and that those properties are not buffered by other commercial development or by Route 18. Relying, in part, on the evidence in the record concerning the New York Sports Club, the Zoning Board concluded that New Vornado had demonstrated that the "impact [of a for-profit health club] on nearby residential developments is insubstantial."

Concerning the second of the negative criteria, the Zoning Board "conclude[d] that the applicant's proposed use will not cause any substantial impairment of the zone plan of the Township because [of] the unmet condition[, which] is the proximity to a residential use." The Board supported that conclusion by pointing out that the facility is over 1,200 feet from any residence and that it is buffered from those residences by commercial development and by Route 18, a six-lane divided highway. It pointed out that the traffic pattern for access to the facility would divert traffic away from residential properties and that the proposal would utilize an existing building without changes to its location or exterior appearance. The Board, therefore, concluded that there would be no detrimental effects to the township, to the residences, to the zone plan or to the zoning ordinance. On that basis, the Zoning Board concluded that granting the variance would advance the purposes of the zoning ordinance and that the benefits derived would substantially outweigh any detriments.

Plaintiff thereafter commenced an action in lieu of prerogative writs. In its complaint, plaintiff included counts asserting that the

Zoning Board's conclusions were flawed because New Vornado should have been required to apply for a (d)(1) use variance rather than a (d)(3) conditional use variance and that New Vornado had not complied with the enhanced proof standard required for the negative criteria.

After conducting a proceeding de novo on the record compiled before the Zoning Board, the trial court upheld the Board's decision. The court first determined that the variance was properly considered and granted as a (d)(3) conditional use variance, thus rejecting TSI's argument that a (d)(1) use variance was required. Applying the standards applicable to a conditional use variance, the trial court concluded that New Vornado had met its burden of proving that its proposed plan satisfied both the positive and negative criteria. As part of its analysis, the trial court determined that TSI had failed to demonstrate that the Zoning Board's decision to grant the conditional use variance was arbitrary, capricious, or unreasonable.

On appeal to the Appellate Division, plaintiff continued to assert that New Vornado's application should have been tested against the standards applicable to a (d)(1) use variance, *see N.J.S.A.* 40:55D-70(d)(1), rather than in accordance with those applicable to a (d)(3) conditional use variance, *see Coventry Square, supra,* 138 *N.J.* at 297-98, 650 *A.*2d 340. The Appellate Division rejected that argument, concluding that the Zoning Board and the trial court had applied the correct standard.

Plaintiff also argued on appeal that the Zoning Board had erred by not requiring New Vornado to prove the negative criteria by the enhanced quality of proofs. *See Medici, supra,* 107 *N.J.* at 4, 526 *A.*2d 109. In addressing that argument, the Appellate Division observed that "[d]eviations from the standards for conditional uses contained in a zoning ordinance trigger the need for a variance under *N.J.S.A.* 40:55D-70(d)." The panel expressed its understanding of the applicable standard by quoting published appellate level precedent that any (d) variance, "whether for a conditional or prohibited use, must satisfy the statute's 'positive criteria' or

'special reasons' for the grant of the variance." *Omnipoint Commc'n, Inc. v. Bd. of Adjustment,* 337 *N.J.Super.* 398, 413, 767 *A.*2d 488 (App.Div.), *certif. denied,* 169 *N.J.* 607, 782 *A.*2d 425 (2001).

Quoting the test established in *Coventry Square,* the Appellate Division observed that "a conditional-use variance applicant must show that the site will accommodate the problems associated with the use even though the proposal does not comply with the conditions the ordinance established to address those problems." *Coventry Square, supra,* 138 *N.J.* at 299, 650 *A.*2d 340. In addition, quoting *Omnipoint* again, the panel noted that "[t]he analysis of the negative criteria for a conditional-use variance ... focuses on the specific deviation and its potential effect on the surrounding properties and the zone plan." *Omnipoint, supra,* 337 *N.J.Super.* at 414, 767 *A.*2d 488.

In affirming the trial court's decision, the Appellate Division did not directly decide whether, in considering an application for a conditional use variance, the enhanced quality of proof standard applies to the negative criteria. Instead, reasoning that New Vornado's evidence satisfied the second prong of the negative criteria whether or not an enhanced quality of proof was required, the appellate court concluded that it was not required to consider plaintiff's alternative argument.

The Appellate Division agreed that the Zoning Board's decision to grant the conditional use variance was supported by substantial credible evidence in the record and was not arbitrary, capricious, or unreasonable. The panel therefore affirmed the trial court's dismissal of plaintiff's complaint.

We thereafter granted TSI's petition for certification, for the limited purpose of determining "the quality of proofs required to satisfy the negative criteria for the issuance of a conditional use variance pursuant to *N.J.S.A.* 40:55D–70(d)(3)." 210 *N.J.* 477, 45 *A.*3d 982 (2012).

## II.

Plaintiff argues that although a conditional use variance application is governed by the less rigorous standards established in *Coventry Square,* the applicant is still required to satisfy the negative criteria through the enhanced quality of proofs. Plaintiff contends that the Zoning Board, as well as the trial and appellate courts, were misled into applying the incorrect standard of proof because of conflicting decisions of the Appellate Division. *Compare House of Fire Christian Church v. Zoning Bd. of Adjustment,* 379 *N.J.Super.* 526, 534–35, 879 *A.*2d 1212 (App.Div.2005), *and Omnipoint, supra,* 337 *N.J.Super.* at 421, 767 *A.*2d 488, *with CBS Outdoor, Inc. v. Borough of Lebanon Planning Bd.,* 414 *N.J.Super.* 563, 579, 999 *A.*2d 1151 (App.Div.2010), *and Meridian Quality Care, Inc. v. Bd. of Adjustment,* 355 *N.J.Super.* 328, 338, 810 *A.*2d 571 (App.Div.2002).

Plaintiff argues that the correct standard, and the standard that should have been utilized by the Zoning Board and the reviewing courts, is the enhanced quality of proofs for the negative criteria established by this Court. *See Medici, supra,* 107 *N.J.* at 4, 526 *A.*2d 109. Plaintiff finds support for this argument by quoting the observation in scholarly commentary that "nothing in [*Coventry Square* ] suggests that the enhanced quality of proof for the negative criteria, established in *Medici,* would not apply in the conditional use context." William M. Cox & Stuart R. Koenig, *New Jersey Zoning & Land Use Administration* § 17–4.2 at 476 (2013) [hereinafter Cox & Koenig].

Substantively, plaintiff argues that had the Zoning Board required the applicant to adhere to the enhanced quality of proofs of the negative criteria, the application would have failed. As part of that argument, plaintiff urges us to consider the fact that the governing body did not change or modify the zoning ordinance after being "fully aware of the previous grant of the conditional-use variance for" plaintiff's health club facility. Plaintiff's reasoning is that, by not removing the 500–foot distance condition, the governing body has made clear that New Vornado's proposed facility is inconsistent with the zoning ordinance. Therefore,

according to plaintiff, New Vornado could not satisfy the second of the negative criteria had it been required to do so by the enhanced quality of proofs.

New Vornado urges us to reject plaintiff's arguments and to affirm the judgment of the Appellate Division. It first asserts that there is no confusion in the law, contending that although there are some published opinions that include dicta that might appear to be inconsistent with *Coventry Square*, each of those opinions applies the correct standard. It argues that the *"Coventry Square* decision is well-settled, long standing and leading authority" that applies to the analysis of "both the positive *and* the negative criteria" required to obtain a conditional use variance and urges us not to depart from that standard.

Applying the *Coventry Square* standard, according to New Vornado, means that the Zoning Board need only be "satisfied" that the grant of a conditional use variance "for the specific project at the designated site is reconcilable with the municipality's legislative determination that the condition should be imposed on all conditional uses in that zoning district." New Vornado further asserts that to the extent that there is language to the contrary in the Cox & Koenig treatise, this Court should disregard it, contending that it springs from the authors' expression of their opinion that in *Coventry Square*, the Court had "go[ne] too far." Cox & Koenig, *supra*, § 17–1 at 464.

The East Brunswick Zoning Board similarly contends that there is no confusion to be resolved and that *Coventry Square* undoubtedly established "a reduced burden of proof to sustain a conditional-use variance." The Zoning Board asserts that courts "must look to 'the specific deviations from the conditions imposed by the ordinance[,]' [*Coventry Square, supra*, 138 *N.J.* at 299, 650 *A.*2d 340,] and weigh whether these deviations could be accommodated."

### III.

█ The dispute before this Court, although limited to the standards governing conditional use variances, carries with it broader implications that require our attention.

The MLUL governs land use generally, as a part of which it authorizes zoning boards to grant variances, under circumstances defined in the statute itself. *See N.J.S.A.* 40:55D–70(d). This Court, recognizing that the MLUL strikes a balance between the power of the governing body to establish zoning through the enactment of a zoning ordinance and the authority given to zoning boards to grant variances, first addressed the standards to be applied in the context of a use variance. *See N.J.S.A.* 40:55D–70(d)(1); *Medici, supra,* 107 *N.J.* at 3, 526 *A.*2d 109.

In *Medici,* we established the now-familiar standard that requires zoning boards to address the positive[1] and the negative criteria found in the MLUL, and we required that the negative criteria be demonstrated in accordance with an enhanced quality of proofs. *Id.* at 4, 526 *A.*2d 109; *see Sica v. Bd. of Adjustment,* 127 *N.J.* 152, 154–55, 603 *A.*2d 30 (1992) (holding that requirement of enhanced proofs for negative criteria does not apply to variance based on inherently beneficial use).

The requirement that the negative criteria be tested in accordance with the enhanced quality of proofs was derived from the recognition that granting a variance is inherently at odds with the uses permitted in the zone as established by the ordinance enacted by the municipality's governing body. As we explained, the new "enhanced quality of proofs" requirement was intended to ensure that the negative criteria would remain "an essential 'safeguard' to prevent the improper exercise of the variance power." *Medici, supra,* 107 *N.J.* at 22, 526 *A.*2d 109.

When we first considered the proofs that should be utilized in considering an application for a conditional use variance, however, we concluded that the standards fixed in *Medici* need not be applied. *Coventry Square, supra,* 138 *N.J.* at 297, 650 *A.*2d 340.

---

[1] The Court in *Medici* addressed variance applications other than those that represent an inherently beneficial use, since such a use would meet the MLUL's special reasons requirement and would automatically satisfy the positive criteria. *See Medici, supra,* 107 *N.J.* at 4 & n. 1, 526 *A.*2d 109.

We held that "[b]ecause a conditional use is not a prohibited use, ... it need not meet the stringent special reasons standards [set forth in *Medici* ] for a commercial-use variance[.]" *Id.* at 287, 650 A.2d 340. Instead, a conditional use variance "allows the applicant to engage in a conditional use despite the applicant's failure to meet one or more of the conditions: It is not the use but the non-compliance with the conditions that violates the ordinance." *Ibid.*

Our conclusion was grounded on our analysis of the history of conditional use variances found originally in the Municipal Planning Act, *N.J.S.A.* 40:55–39(b) (repealed in 1975), a statute that the MLUL has since replaced. That statute had "established both affirmative and negative criteria for granting special-exception uses[,]" which were "the predecessor to conditional use[ ]" variances. *Coventry Square, supra,* 138 *N.J.* at 293, 650 A.2d 340. As we observed, under the earlier statute, although the

> substance of the negative criteria were the same for special exceptions as for use variances[,] ... the level of proofs required to satisfy the negative criteria for a special-exception use was acknowledged to be less substantial than that required for a use variance because "the ordinance itself makes the proposed [special-exception] use permissive in the particular zone."
>
> [*Ibid.* (quoting *Tullo v. Twp. of Millburn,* 54 *N.J.Super.* 483, 491, 149 A.2d 620 (App.Div.1959)).]

In considering the interplay between the provisions of the MLUL and the development of the law concerning variances generally, *see id.* at 295–96, 650 A.2d 340 (analyzing *Medici, supra,* 107 *N.J.* at 4, 11–13, 526 A.2d 109), we observed in *Coventry Square* that "the few cases that [had] specifically addressed the standard for granting a conditional-use variance [had] treated it as if it were indistinguishable from a variance for a prohibited use[,]" *id.* at 296, 650 A.2d 340.

That is, "courts generally [had] treated a conditional use that does not comply with all the conditions of the ordinance as if it were a prohibited use, imposing on the applicant the same burden of proving special reasons as it would impose on applicants for use variances." *Id.* at 297, 650 A.2d 340. This Court, however, explicitly rejected that approach, reasoning that such treatment

"is plainly inappropriate and does not adequately reflect the significant differences between prohibited uses ... and conditional uses that do not comply with one or more of the conditions imposed by an ordinance[.]" *Ibid.* As we explained, "[t]he burden of proof required to sustain a use variance not only is too onerous for a conditional-use variance[,] ... [it] is misplaced." *Id.* at 298, 650 *A.*2d 340.

This Court, therefore, established the framework to be utilized in evaluating an application for a conditional use variance, commenting that "use-variance proofs attempt to justify the board of adjustment's grant of permission for a use that the municipality has prohibited[, whereas p]roofs to support a conditional-use variance need only justify the municipality's continued permission for a use notwithstanding a deviation from one or more conditions of the ordinance." *Ibid.*

The standard that we fixed for conditional use variances addressed the positive criteria:

[T]he proof of special reasons that must be adduced by an applicant for a ... conditional use [variance] shall be proof sufficient to satisfy the board of adjustment that the site proposed for the conditional use, in the context of the applicant's proposed site plan, continues to be an appropriate site for the conditional use notwithstanding the deviations from one or more conditions imposed by the ordinance. That standard of proof will focus both the applicant's and the board's attention on the specific deviation from conditions imposed by the ordinance, and will permit the board to find special reasons to support the variance only if it is persuaded that the non-compliance with conditions does not affect the suitability of the site for the conditional use. Thus, a conditional-use variance applicant must show that the site will accommodate the problems associated with the use even though the proposal does not comply with the conditions the ordinance established to address those problems.

[*Id.* at 298–99, 650 *A.*2d 340.]

In addressing the proofs required for the negative criteria, this Court described the applicable test as being "similar" to the standard to be applied to the positive criteria. *Id.* at 299, 650 *A.*2d 340. We explained that "the focus [of the first prong] is ... the effect on surrounding properties of the grant of the variance for the specific deviations from the conditions imposed by ordinance." *Ibid.* Elaborating on the test, we commented that "[t]he board of

adjustment must evaluate the impact of the proposed [conditional] use variance upon the adjacent properties and determine whether or not it will cause such damage to the character of the neighborhood as to constitute 'substantial detriment to the public good.' " *Ibid.* (quoting *Medici, supra,* 107 *N.J.* at 22 n. 12, 526 *A.2d* 109).

Specifically as it relates to the second prong of the negative criteria, we held that "the board of adjustment must be satisfied that the grant of the conditional-use variance for the specific project at the designated site is reconcilable with the municipality's legislative determination that the condition should be imposed on all conditional uses in that zoning district." *Ibid.*

Although we stated in *Coventry Square* that, in the context of a conditional use variance application, the evaluation of the negative criteria is "similar" to the relaxed standard to be applied to the positive criteria, we did not delineate the test more specifically. Nor was any further elucidation needed, because the issue before the Court in *Coventry Square* related to the level of proofs needed to demonstrate the positive criteria in the conditional use context, rather than the level appropriate to the negative criteria. Apparently, however, because of the Court's citation to *Medici* in the discussion about the negative criteria, there has been some debate about what standard this Court intended to be applied. Our grant of certification in this case, therefore, was directed to the level of proofs that are required for evaluation of the negative criteria in applications for conditional use variances in order to resolve the matter.

 An application for a use variance, also referred to as a (d)(1) variance, *N.J.S.A.* 40:55D–70(d)(1), seeks permission from a zoning board to put property to a use that is otherwise prohibited by the zoning ordinance. Both the positive and negative criteria in such an application are tested in accordance with the standards first established in *Medici.* In contrast, a conditional use, by definition, is a use that the zoning ordinance permits if the applicant meets all of the conditions that are embodied in the

ordinance. *See N.J.S.A.* 40:55D–70(d)(3). In that case, the use becomes a permitted use in the sense that no variance is required.

However, if a property owner seeking to devote the property to a conditional use cannot meet one or more of the conditions imposed by the zoning ordinance, the property owner must apply for a (d)(3) conditional use variance. The inability to comply with one or more of the conditions does not convert the use into a prohibited one and, thus, the application is not tested in accordance with the standards established in *Medici* that govern applications for a (d)(1) use variance.

Instead, the question is whether, in light of the failure to meet one of the conditions fixed by the zoning ordinance, the use "is reconcilable with the municipality's legislative determination that the condition should be imposed on all conditional uses in that zoning district." *Coventry Square, supra,* 138 *N.J.* at 299, 650 *A.*2d 340. In undertaking that analysis, the weighing is entirely different from that demanded for a (d)(1) use variance because the governing body has not declared that the use is prohibited but, instead, has elected to permit the use in accordance with certain expressed conditions. Accordingly, the focus of the analysis is on the effect of non-compliance with one of the conditions as it relates to the overall zone plan.

Although we did not directly opine on whether the enhanced quality of proofs required under *Medici* for evaluation of the negative criteria in consideration of a (d)(1) use variance had any application to an application for a (d)(3) variance either in *Coventry Square,* or thereafter, *see Cell S. of N.J., Inc. v. Zoning Bd. of Adjustment,* 172 *N.J.* 75, 86–88, 796 *A.*2d 247 (2002) (concluding that zoning board's denial of conditional use variance based on rejection of unrebutted expert proofs in support of negative criteria demonstrated that board's decision was arbitrary and capricious), we today conclude that the enhanced quality of proofs standard has no application in the evaluation of an application for a conditional use variance. We reach this conclusion for three reasons.

First, the analyses of use variances and conditional use variances are fundamentally different. The former proceeds in the context of a use that the governing body has prohibited, whereas the latter proceeds in the context of a use that, if it complies with certain conditions, is permitted. For that reason, our decision in *Coventry Square* recognized that the focus for the zoning board is one of evaluating "the specific project at the designated site" to determine whether granting relief from one of the conditions can be reconciled with the governing body's imposition of the condition in the zone. *Coventry Square, supra,* 138 *N.J.* at 299, 650 *A.*2d 340. The words we chose to describe the applicable test are simply not consistent with the *Medici* enhanced quality of proofs standard; they recognize instead that the evaluation of the negative criteria in connection with an application for a conditional use variance proceeds on an entirely different premise.

Second, notwithstanding plaintiff's assertions, the published decisions bearing on the question are not in conflict. Two of the opinions on which plaintiff relies simply do not consider the quantum of proofs, instead resolving the issues raised on appeal on alternate grounds. *See, e.g., CBS Outdoor, Inc., supra,* 414 *N.J.Super.* at 583–84, 999 *A.*2d 1151 (reversing and remanding to zoning board for failure to analyze application in accordance with *Coventry Square* principles rather than because of asserted lack of requisite quality of proofs); *Omnipoint, supra,* 337 *N.J.Super.* at 421–22, 767 *A.*2d 488 (upholding zoning board's denial of conditional use variance because of absence of any proofs of negative criteria rather than because of insufficient quantum of proofs).

Two other appellate level decisions, to be sure, have commented on the issue now before this Court. *See House of Fire, supra,* 379 *N.J.Super.* at 534–39, 879 *A.*2d 1212 (remanding decision because record insufficient to determine whether board balanced positive and negative factors); *Meridian Quality Care, supra,* 355 *N.J.Super.* at 338–39, 810 *A.*2d 571 (remanding for further proceedings relevant to site plan review).

One of these appellate panels did not directly consider whether the negative criteria would be required to be tested against the enhanced quality of proofs in the context of a conditional use variance because the applicant's evidence was unrebutted. *Meridian Quality Care, supra,* 355 *N.J.Super.* at 341–42, 810 *A.*2d 571. However, in discussing the *Coventry Square* principles, the appellate court referred to its "modified, negative criteria standard," *id.* at 339, 810 *A.*2d 571, and contrasted that methodology with the ordinary *Medici* approach, stressing that the focus is on " 'the specific deviations from the conditions imposed by ordinance[,]' " *id.* at 338, 810 *A.*2d 571 (quoting *Coventry Square, supra,* 138 *N.J.* at 299, 650 *A.*2d 340).

In the other decision, the Appellate Division concluded that the enhanced quality of proofs did not apply to the negative criteria in an application for a conditional use variance, but based that conclusion on the fact that the particular use was inherently beneficial. *House of Fire, supra,* 379 *N.J.Super.* at 535, 879 *A.*2d 1212. The panel therefore applied the analytical approach appropriate to inherently beneficial uses, as a result of which only a balancing of the positive and negative criteria was required. *Ibid.; see Sica, supra,* 127 *N.J.* at 165, 603 *A.*2d 30; *see also Smart SMR of N.Y., Inc. v. Borough of Fair Lawn,* 152 *N.J.* 309, 323, 704 *A.*2d 1271 (1998). Contrary to plaintiff's assertions, these decisions are not inconsistent with the *Coventry Square* analysis or with each other. None, moreover, suggests that there is any reason to demand that an application for a conditional use variance be tested against the enhanced quality of proofs.

Third, we are not persuaded by the reasoning of the scholarly commentators on whom plaintiff relies. Perhaps the strongest source of support for plaintiff's argument that the *Coventry Square* decision does not lower the otherwise applicable quality of proofs for the negative criteria comes from the leading commentators on the MLUL. *See* Cox & Koenig, *supra,* § 17–4.2 at 476–77. They have observed that, in their view,

nothing in [*Coventry Square*] suggests that the enhanced quality of proof for the negative criteria, established in [*Medici*], would not apply in the conditional use context.... Indeed, the rationale for such enhanced quality of proof applies with equal force.... The governing body's actions in [imposing conditions] create a presumption against the suitability of a site for a conditional use when it does not satisfy each and every condition.

[*Ibid.*]

We, however, do not agree. Were we to require that the *Medici* standards for consideration of the negative criteria be applied in the conditional use context, we would effectively erase the distinction that a conditional use creates. Rather than recognizing that the use is essentially permitted, albeit with conditions, we would be presuming that the use is prohibited unless the conditions are met or are proven in accordance with the standards ordinarily required to secure a use variance. By demanding that an applicant for a conditional use variance prove the negative criteria by the enhanced quality of proofs, we would erase the distinction that the governing body drew when it designated the use as conditional. Thus, we would be transforming the (d)(3) analysis into a (d)(1) analysis, a result directly contrary to the fundamental basis on which the *Coventry Square* decision rests.

The Zoning Board in this matter, both on its own accord and based on expert testimony from the applicant's professional planner, concluded that the applicant was not required to prove the negative criteria by an enhanced quality of proofs. It applied the test established in *Coventry Square*, weighing the proofs as to the negative criteria in order to determine whether, notwithstanding the failure of one of the conditions, the proposal was reconcilable with the zone.

We detect no error in the legal analysis that supported the Zoning Board's decision. Nor do we find any failure of the requisite proofs. The Zoning Board was entitled to accept the expert opinion offered by New Vornado's planner and to reject the contrary opinions offered by TSI's planner. *See Kramer v. Bd. of Adjustment*, 45 *N.J.* 268, 288, 212 *A.*2d 153 (1965) (quoting *Rei-*

*nauer Realty Corp. v. Nucera,* 59 *N.J.Super.* 189, 201, 157 *A.*2d 524 (App.Div.), *certif. denied,* 32 *N.J.* 347, 160 *A.*2d 845 (1960)).

The Zoning Board carefully evaluated the location where the facility would be established and gave due consideration to the impact it will have on residences across the highway in light of the buffers created by the other commercial buildings and the barrier formed by Route 18. It also appropriately considered the experience gained from the existence of plaintiff's health club, which was shown to have had minimal impact on residences that are far closer and with which it shares an access road.

Nor was the Zoning Board required to conclude that the governing body's failure to rezone the property following the grant of a conditional use variance to plaintiff constituted an expression that the governing body intended that there be no further such facilities in the zone. That logic would create a sort of single-conditional-use-variance approach, effectively transforming the conditional use into a prohibited one and preventing the Zoning Board from exercising the authority granted to it by the MLUL. We do not discern in the record any basis for such a broad understanding of the governing body's silence. Because the decision of the Zoning Board was not arbitrary, capricious, or unreasonable, it must be sustained.

## IV.

The judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice RABNER, Justices LaVECCHIA, ALBIN, HOENS, PATTERSON, Judges RODRÍGUEZ (temporarily assigned), and CUFF (temporarily assigned)—7.

*Opposed*—None.