**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3290-19

IDON MEDIA-NJ, LLC,

     Plaintiff-Appellant,

v.

BOROUGH OF EATONTOWN
ZONING BOARD OF
ADJUSTMENT and BOROUGH
OF EATONTOWN,

     Defendants-Respondents.

_____

Argued September 15, 2021 – Decided October 18, 2021

Before Judges Hoffman, Geiger, and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-4606-18.

Daniel J. O'Hern, Jr., argued the cause for appellant (Byrnes, O'Hern & Heugle, LLC, attorneys; Daniel J. O'Hern, Jr., on the briefs).

Marc A. Leckstein argued the cause for respondent Borough of Eatontown Zoning Board of Adjustment

(Leckstein & Leckstein, LLC, attorneys; Marc A. Leckstein, on the brief).

PER CURIAM

Plaintiff IDON Media-NJ LLC (IDON) appeals a March 19, 2020 Law Division order upholding a zoning board of adjustment's denial of an application for a conditional use variance and dismissing its complaint in lieu of prerogative writs. We affirm.

The Law Division judge found that the Board's resolution (the Resolution) denying the application was supported by the evidence and was not arbitrary, capricious, or unreasonable. Having reviewed the record de novo considering the applicable legal standards, we affirm.

The underlying facts are discussed at length in the Resolution and the Law Division judge's written opinion. We highlight here only what is most important to our decision.

On a date not reflected by the record, plaintiff sought site plan approval and a conditional use variance under N.J.S.A. 40:55D-70(d)(3) from defendant Borough of Eatontown Board of Adjustment (the Board) to construct a large digital billboard on property in a B-2 Zone located along State Route 35 in Eatontown, designated as Block 1304, Lots 1 and 2 on the Eatontown tax map (the property).

On December 1, 2017, the New Jersey Department of Transportation (NJDOT) issued an Outdoor Advertising Permit to plaintiff to "erect, maintain, or use" a multimessage "outdoor advertising structure" measuring 36 feet by 10.6 feet on the property. The permit was expressly conditioned on plaintiff obtaining all relevant required municipal approvals.

On December 27, 2017, the Borough enacted Ordinance No. 10-2017 (the Ordinance), amending Section 89-51 of the Zoning Code, which regulated billboards.[1] As amended, Section 89-51 provides:

> Billboards shall be permitted as a conditional use for those properties fronting on State Highway 35 located in the B-2 and B-5 Zones, subject to the following conditions:
>
> A. The proposed billboard is a replacement of an existing billboard for which a permit from the [NJDOT] was previously issued pursuant to the New Jersey Roadside Sign Control and Outdoor Advertising Act (N.J.A.C. 27:5-5 et seq. and N.J.A.C. 16:41C-1.1 et seq.).
>
> B. The proposed billboard shall be in the identical location as the existing billboard it is replacing and shall be no larger than the replaced billboard.

---

[1] The Board previously considered an application by another company to erect a billboard as the primary use of other property located along State Highway 35. Because billboards were not yet a permitted use under the Borough's Zoning Ordinance, the application was considered a "principal use variance" under N.J.S.A. 40:55D-70(d)(1).

However, in no event shall the area of the replacement billboard exceed 500 square feet on any single sign face. Two[-]sided and V configured billboards shall be permitted.

C. No billboard shall be located on a lot developed with any use, building, business or structure that is not permitted pursuant to this chapter, unless otherwise previously approved by variance, and further that no billboard shall be located on any lot with a residential use;

D. The billboard shall only be constructed as a ground sign and located twenty-five (25) [feet] or greater from any building, and fifteen (15) feet or greater from any parking lot, driveway or sidewalk;

E. No billboard shall be permitted on any lot with a ground sign with an area of fifty (50) square feet or greater, constructed or approved, unless the distance between the billboard and ground sign is greater than two hundred (200) feet;

F. No part of a billboard shall be located less than twenty (20) feet or more than one hundred (100) feet from the State Highway 35 right-of-way line;

G. No part of a billboard shall be two hundred fifty (250) feet from an existing residential property or residential zone boundary;

H. No part of a billboard shall be one thousand (1000) feet from another billboard;

I. The maximum billboard height shall be thirty-five (35) feet as measured from any point of the finished grade at the base of the structure to the highest point of the billboard structure;

4

J.   Billboards with digital, electronic, LED, or changeable copy, and multiple message signs shall be permitted provided that the dwell time for each message or message board is not less than eight (8) seconds and further provided a message change shall be completed within two (2) seconds;

K.  No billboard shall flash, blink, move, simulate or create the illusion of motion, or contain animated display or full motion video; and

L.  Billboards proposed under this section shall be subject to site plan approval and require the issuance of sign permits from NJDOT and the Borough.

As originally proposed, the digital billboard would be two-sided, V-shaped, pole mounted, approximately thirty-six-feet tall, and operate twenty-four hours a day with a dwell time of eight seconds per message.[2]

A February 27, 2018 letter by Martin P. Truscott, PP, AICP, the Board's planning consultant, reported that the proposed billboard did not meet the following conditions imposed by Section 89-51: (1) contrary to subsection (A), the proposed billboard would not replace an existing billboard; (2) contrary to subsection (B), the proposed billboard would replace a smaller existing sign, not a billboard, and would be located further off the road than the existing sign; (3) contrary to subsection (D), the proposed billboard would

---

[2] Plaintiff later reduced the hours of operation to 6:00 a.m. to midnight.

A-3290-19

be located less than three feet from an existing sidewalk and less than fifteen feet from the Clinton Street entrance to the property; (4) contrary to subsection (F), the proposed billboard would be located three feet from the curb line of State Highway 35; (5) contrary to subsection (G), the proposed billboard would be located approximately 150 feet from the nearest residential zone boundary; and (6) contrary to subsection (H), the proposed billboard would be located less than 1000 feet from an existing billboard. Accordingly, plaintiff was required to obtain a conditional use (d)(3) variance.

The Board conducted a two-day public hearing. The Board first heard testimony from one of IDON's principals, Larry Clark, who testified that IDON builds billboards nationwide to promote local businesses. Clark explained that the brightness of the billboard decreases as nighttime approaches. IDON preferred digital billboards because they use less energy overall and require fewer workers to change the billboard's art. Clark noted that digital billboards can display government-related information such as Amber Alerts or emergency evacuation warnings, which IDON was willing to display.

John Tobias, P.E., testified as IDON's lighting expert. He opined that the application met the requirements of Section 89-51, applicable New Jersey

6

State regulations, and the Illuminating Engineering Society's guidelines. Clark further testified about the revised plans for the billboard.

The Board focused on whether the billboard would project light into the homes of nearby residents. Jim Shimmin, the manufacturer of the proposed billboard's video screen, testified as to its brightness. He acknowledged that nearby residents would be able to see the billboard.

Andrew Janiw, a licensed professional planner, also testified for IDON. Janiw asserted that the application should be considered under the (d)(3) conditional use standard. He noted that the billboard will not blink, flash, or display movement, and advertisements will change on an eight-second interval. Janiw acknowledged that the proposed billboard would not replace an existing billboard. He opined that IDON "can diminish . . . any negative impacts. . . ."

As to subsection (E), which prohibited billboards within 250 feet of any existing residential property or residential zone boundary, Janiw acknowledged that two buildings were within 250 feet, a daycare located approximately 150 feet away and a restaurant located approximately 210 feet away. Janiw noted, however, that the daycare would only have a view of the unlit rear of the billboard and would not experience any light impact. Janiw also

7

acknowledged that the corner of a residentially zoned lot was within approximately 220 feet of the proposed billboard but stated that any impact would be "fairly de minimis in terms of . . . light late at night." He further acknowledged there were three existing billboards within 1000 feet of the proposed billboard. Janiw nevertheless contended the proposal met the intent of Section 89-51 and emphasized the billboard would be located in "a highway commercial zone."

The Board also heard comments from the public, which mainly implored the Board to deny the application due to complaints about the light emitted by the billboard affecting nearby residences.

Board Chairman Kenneth East stated there were major problems with this application, mainly that it did not comply with the 250-foot buffer requirement, the proposed billboard would not replace an existing billboard, and the billboard would be within 1000 feet of another billboard. The Board voted unanimously to deny the application. The Board's findings and reasoning were embodied in a November 19, 2018 Resolution.

The Board noted that while "a conditional use variance approval is technically required pursuant to the provisions of N.J.S.A. 40:55D-70(d)(3),

8

. . . the Board has no choice but to treat this application as a primary use variance pursuant to the provisions of N.J.S.A. 40:55D-70(d)(1)."

The Board explained that subsections (A) and (B) are not guidelines, they impose "conditions precedent to permitting an applicant to place a digital billboard within the Borough." Even if IDON had satisfied subsections (A) and (B), it was unable to satisfy the negative criteria required for a (d)(3) variance. The testimony of IDON's experts demonstrated that the billboard would be a detriment to neighboring properties that was not "outweighed by the benefits potentially created by a grant of the application." Moreover, the billboard application failed because the site was located only 150 feet away from a residential zone, would shine visible light onto nearby properties, and that changing images every eight seconds would "present an annoyance."

On December 28, 2018, plaintiff filed a four-count complaint in lieu of prerogative writs naming the Board and the Borough as defendants. Plaintiff filed an amended complaint one week later. Plaintiff's claims against the Borough were voluntarily dismissed.

The trial court conducted a non-testimonial bench trial on September 6, 2019. Plaintiff first argued that "[a]t no time prior to the hearing or anytime during the hearing did anybody from the Board ever say to us, sorry, we are

9

. . . holding you now to the more enhanced quality of proof that was required under <u>Medici</u> for a D-1 use variance." Plaintiff likened this to a moving target. Relying on <u>TSI E. Brunswick v. Zoning Bd. of E. Brunswick</u>, 215 N.J. 26, 40 (2013), plaintiff argued that the <u>Medici</u> [3] standard [4] does not apply to conditional use variances. Plaintiff also contended the Square Corners Doctrine applies, as the Board gained an unfair advantage by considering the case under the (d)(1) standard without allowing IDON to brief the issue.

Defendants responded that the requirement that a new billboard must replace an existing billboard is a necessary condition, which could not be avoided through a (d)(3) variance. In addition, defendants argued that the Resolution addressed why the application did not satisfy the <u>Coventry</u> standard for a (d)(3) variance because it did not meet several conditions imposed by Section 89-51.

---

[3] <u>Medici v. BPR Co.</u>, 107 N.J. 1 (1987).

[4] In <u>Medici</u>, the Court adopted a two-prong standard for use variances. "[I]f the use for which the variance is sought is not one that inherently serves the public god, the applicant must prove . . . that the use promotes the general welfare because the site is particularly suitable for the proposed use." 107 N.J. at 4. In addition, by "an enhanced quality of proof," the board of adjustment must specifically find "that the grant of a use variance is not inconsistent with the intent and purpose of the master plan and zoning ordinance. <u>Ibid.</u>

A-3290-19

The court issued a March 19, 2020 order and written statement of reasons denying plaintiff's application to overturn the Board's decision and dismissing the amended complaint. This appeal followed.

Plaintiff raises the following points for our consideration:

POINT I

LEGAL STANDARDS.

    A. Standard of Review.

    B. Conditional Use Variance.

POINT II

THE TRIAL COURT ERRED IN HOLDING THAT THE DEFENDANT CORRECTLY APPLIED THE (d) (1) MEDICI USE VARIANCE STANDARD TO THE PLAINTIFF'S CONDITIONAL USE VARIANCE APPLICATION.

    A. The Defendant and the Trial Court Committed Plain Legal Error in Failing to Apply the Coventry Standards.

    B. The Trial Court Further Erred in Interpreting the Billboard Ordinance as Having Conditions Precedent to the Grant of the Conditional Use Variance.

POINT III

THE TRIAL COURT ERRED IN NOT FINDING THAT PLAINTIFF'S PROOFS SATISFIED THE

11

<u>COVENTRY</u>[5] STANDARDS FOR THE GRANT OF THE CONDITIONAL USE VARIANCE.

A. The Defendant's Denial of The Conditional Use Variance Was Arbitrary, Capricious and Unreasonable Because it Applied the Wrong Legal Standards and Mischaracterized the Testimony of the Plaintiff's Witnesses.

B. Applying the <u>Coventry</u> Standards, the Court Should Grant the Plaintiff's Application for the Conditional Use Variance.

Our review of the trial court's decision in this case is de novo, applying the same legal standards as the trial judge. <u>Charlie Brown of Chatham, Inc. v. Bd. of Adjustment of Chatham</u>, 202 N.J. Super. 312, 321 (App. Div. 1985). The decision of a municipal zoning board is entitled to substantial deference, <u>Kramer v. Bd. of Adjustment, Sea Girt</u>, 45 N.J. 268, 296 (1965), and is presumed to be valid, <u>Dunbar Homes, Inc. v. Zoning Bd. of Adjustment of Twp. of Franklin</u>, 233 N.J. 546, 558 (2018) (citation omitted). "[T]he action of a board will not be overturned unless it is found to be arbitrary, capricious, and unreasonable, with the burden of proof placed on the plaintiff challenging the action." <u>Dunbar Homes,</u> 233 N.J. at 558 (quoting <u>Grabowsky v. Twp. of Montclair</u>, 221 N.J. 536, 551 (2015)).

---

[5] <u>Coventry Square, Inc. v. Westwood Zoning Bd. of Adjustment</u>, 138 N.J. 285 (1994).

We defer to the board's particular knowledge of local conditions and may not substitute our judgment for that of the board. Burbridge v. Governing Body of Twp. of Mine Hill, 117 N.J. 376, 385, 389 (1990). The "deference accorded to a board's denial of a variance is greater than that given to its decision to grant a variance." CBS Outdoor, Inc. v. Borough of Lebanon Plan. Bd., 414 N.J. Super. 563, 578 (App. Div. 2010) (citations omitted). "Thus, a party seeking to overturn the denial of a variance . . . must prove that the evidence before the local board was 'overwhelmingly in favor of the applicant.'" Id. at 579 (quoting Scully-Bozarth Post 1817 of the VFW v. Plan. Bd., 362 N.J. Super. 296, 314-15 (App. Div. 2003)).

We first address whether the proposed billboard required a prohibited use variance under N.J.S.A. 40:55D-70(d)(1) or a conditional use variance under N.J.S.A. 40:55D-70(d)(3). N.J.S.A. 40:55D-3 defines a conditional use as:

> a use permitted in a particular zoning district only upon a showing that such use in a specified location will comply with the conditions and standards for the location or operation of such use as contained in the zoning ordinance, and upon the issuance of an authorization therefor by the planning board.

A (d)(1) use variance "allows the applicant to engage in a prohibited use: It is the use that violates the ordinance." Coventry, 138 N.J. at 287. In

contrast, a (d)(3) conditional use variance allows the applicant to engage in a conditional use that does not meet specific conditions set forth in the zoning ordinance. Ibid. This distinction was reflected in the standards Coventry established for granting a conditional use variance which are not subject to the more stringent standard applicable to a commercial-use variance. Id. at 287 (citing Medici, 107 N.J. at 9-18).

"Consequently, although a conditional use may be appropriate in certain areas of a zoning district, it is not necessarily appropriate everywhere within the zoning district." CBS Outdoor, 414 N.J. Super. at 579. For this reason, a municipality may "delegate discretion to its planning board to consider the suitability of a proposed conditional use for a particular site." Ibid. (quoting Cardinal Props. v. Westwood, 227 N.J. Super. 284, 287 (App. Div. 1988)).

"If, however, the proposed conditional use does not meet all of the conditions for the use, an applicant must apply to the board of adjustment for a conditional use variance pursuant to the standards articulated in N.J.S.A. 40:55D–70(d)(3)." Ibid. (citing Coventry, 138 N.J. at 296). "A variance for a deviation from a condition allows the applicant to engage in a conditional use despite the applicant's failure to meet one or more of the conditions: It is not

14

the use but the non-compliance with the conditions that violates the ordinance." Ibid. (quoting Coventry, 138 N.J. at 287).

Applying these principles, the proposed billboard clearly required a (d)(3) conditional use variance, not a (d)(1) use variance. Application of the more stringent Medici use variance standard was improper. "The burden of proof required to sustain a use variance not only is too onerous for a conditional-use variance; in addition, its focus is misplaced." Coventry, 138 N.J. at 298. That finding, however, does not end our analysis. See Hayes v. Delamotte, 231 N.J. 373, 387 (2018) (explaining that appellate courts review orders, not opinions).

In Coventry, the Court described the board's task as to each of the two prongs of the negative criteria and instructed that, when a conditional use variance is considered, the negative criteria is assessed in terms of the impact of the deviation, not the impact of the use. 138 N.J. at 299. The first prong requires "that the variance can be granted 'without substantial detriment to the public good. . . .'" Ibid. (citing N.J.S.A. 40:55D–70). The "focus is on the effect on surrounding properties of the grant of the variance for the specific deviations from the conditions imposed by ordinance." Ibid. The board is required to "evaluate the impact of the proposed [conditional-]use variance

upon the adjacent properties and determine whether or not it will cause such damage to the character of the neighborhood as to constitute 'substantial detriment to the public good.'" Ibid.

The second prong requires proof "that the variance will not 'substantially impair the intent and purpose of the zone plan and zoning ordinance. . . .'" Ibid. (quoting N.J.S.A. 40:55D–70(d)). For this prong to be met, "the board of adjustment must be satisfied that the grant of the conditional-use variance for the specific project at the designated site is reconcilable with the municipality's legislative determination that the condition should be imposed on all conditional uses in that zoning district." Coventry, 138 N.J. at 299.

Importantly, "[t]he inability to comply with one or more of [a zoning ordinance's conditions] does not convert the use into a prohibited one and, thus, the application is not tested in accordance with the standards . . . that govern applications for a (d)(1) use variance." TSI E. Brunswick, 215 N.J. at 43.

For a zoning board to grant a (d)(3) variance, the applicant must first show that the premises is an appropriate site for the proposal, notwithstanding any deviations. Coventry, 138 N.J. at 298. The negative criteria are established if the variance may be granted "without substantial detriment to the

16                                                                                    A-3290-19

public good," and the variance will not "substantially impair the intent and purpose" of the zoning ordinance. Id. at 299 (citations omitted). This is known as the Coventry standard.

The principal issue in this case is whether the order on appeal and underlying Resolution must be vacated because the wrong standard was applied. Although the (d)(1) standard was applied, considering the Board's findings, we find that the outcome would have been the same. Indeed, during oral argument before this court, plaintiff's counsel acknowledged that a remand would be academic because both the Board and the trial court found that plaintiff did not satisfy either the (d)(1) or (d)(3) test.

Plaintiff's argument that the Board applied the wrong standard is understandable; however, the Board's Resolution denying the application also explained that the application would have failed a (d)(3) analysis under the Coventry standard.

With respect to a (d)(1) variance, the Board found the plaintiff "has not attempted to present any special reasons as to why the limitations of the zoning ordinance should be waived." Further, the Board found the site not particularly suitable for a digital billboard because it is located too close to a residential zone, residential neighbors would be faced with an annoyance, and

17

nearby properties would be burdened by the light emanating from the billboard. With respect to a (d)(3) variance, the Board found plaintiff could not "satisfy the 'negative' criteria required by the statute." The trial court reached a similar conclusion, finding that plaintiff could not "[meet] their burden in establishing the negative criteria," citing the intensity of the billboard's light and its effect on the neighborhood.

Because we review the Board's decision de novo, and "the memorializing resolution of the Board is the wellhead for the judiciary's consideration of the validity of municipal action," we review the pertinent findings and reasons expressed in the Resolution for denying the conditional use variance. CBS Outdoor, 414 N.J. Super. at 580. Here, the Board's comprehensive eleven-page Resolution provides a detailed description of the application, related facts, and testimony.

The Resolution found the proposed billboard did not meet the following conditions imposed by Section 89-51: it did not replace an existing billboard, contrary to subsection (A); is not in an identical location of an existing billboard, contrary to subsection (B); is not located at least fifteen feet from any parking lot, contrary to subsection (D); is located approximately 150 feet

18

from the nearest residential zone, contrary to subsection (G); and is located less than 1000 feet from another billboard, contrary to subsection (H).

While the billboard would not be visible from most homes along Clinton Avenue during the spring and summer months due to trees, the Board found it would be visible during the fall and winter months. In addition, the light emanating from the billboard would shine into a real estate office. Five nearby residents and one business owner objected to the light and images that the billboard would project. The amount of light created by the billboard "would present an annoyance." In addition, [t]hose properties which cannot see the digital screen itself would nevertheless be left with the sight of the sides of the billboard on their horizon." The Board concluded:

> The . . . applicant would not be eligible to receive '(d)(3)" variance relief because it would not be able to satisfy the 'negative' criteria' required by the statute. By the testimony of its own experts, the sign would crete a detriment to neighboring properties which in no way could be outweighed by the benefits potentially created by a grant of the application."

The Board did not accept Janiw's proposition that the adoption of Section 89-51 should be construed as an endorsement by the Borough of placing a billboard on the property. It noted that the variance application "cannot be reconciled with the ordinances which are in place." The Board

19

concluded that "allow[ing] placement of a digital billboard on a property where no billboard has previously existed would be tantamount to zoning by variance rather than by ordinance."

Lastly, we address plaintiff's argument that the Board violated the so-called Square Corners Doctrine by originally advising it to proceed under the (d)(3) Coventry standard, subsequently adopting a new ordinance, and applying the (d)(1) standard. During oral argument before this court, however, plaintiff's counsel acknowledged that had it known that the (d)(1) test would be applied, plaintiff's presentation would have been only "slightly different." Consequently, plaintiff does not request a remand. As we have already noted, the Board's findings were sufficient to deny a conditional use variance under a (d)(3) analysis.

The Board's findings were fully supported by the record. Plaintiff clearly did not satisfy five of the conditions imposed by Section 89-51. The denial of a conditional use variance was not arbitrary, capricious, or unreasonable. Applying our deferential standard of review, we discern no basis to overturn the Board's decision.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3290-19